## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BRADY MCFARLAND, | : | **IN CAMERA AND UNDER SEAL** |
| | : | |
| Plaintiff, | : | Case No. 8:15-CV-1708-T-23T6W |
| | : | |
| v. | : | **FIRST AMENDED COMPLAINT** |
| | : | **FOR FALSE CLAIMS ACT** |
| FLORIDA PHARMACY SOLUTIONS; | : | **VIOLATIONS UNDER** |
| PARADIGM HEALTHCARE | : | **31 U.S.C. § 3729 *ET SEQ.*** |
| SOLUTIONS LLC D/B/A | : | |
| ATHENA SPECIALTY PHARMACY; | : | |
| CUSTOM PHARMACY SOLUTIONS | : | **JURY TRIAL DEMANDED** |
| LLC; DESTREHAN DISCOUNT | : | |
| PHARMACY; PHYSICIAN | : | |
| SPECIALTY PHARMACY LLC; | : | |
| TESTFORTHAT, LLC D/B/A | : | |
| REJUVENX PHARMACY; | : | |

PRESCRIPTION SHOPPES, LLC D/B/A
THE MEDICINE SHOPPE; 1ST CARE
MD; BALANCED RX LLC;
COMPLETE HEALTHCARE
CONCIERGE; DE NOVO MEDICAL
MARKETING LLC; HOUSECALLS
24/7; MEDIVERSE LLC; NEXGEN
MEDCARE LLC; USA
PHARMACEUTICAL GROUP LLC;
VIRTUAL HEALTHCARE, INC.;
MELONIE KOTCHEY; WAYNE
WILKERSON; ANKLE AND FOOT
CENTERS OF GEORGIA; FRANK
AMICO, M.D.; MATTHEW THOMAS
ANEY, M.D.; AIMIE APIGIAN, M.D.;
JASON BECK, M.D.; NICOLE
CALDWELL, M.D.; LAUREN
CARRICO-VARGO, N.P.; WILLIAM
CLEARFIELD, N.P.; CANDACE
CRAVEN, N.P.; LORRAINE DE
BLANCHE, M.D.; JOSHUA DIETZER,
M.D.; TONI DOBSON, N.P.; BRYAN
DONER, M.D.; JEFFREY DURGIN,
M.D.; ROXANNE EDWARDS, M.D.;

2016 SEP 22 PH 2: 15

S-12

JEFFREY FAGGARD, M.D.; SU
FAIRCHILD, M.D.; SARA GARCIA,
M.D.; VITALIY GAVRIKOV, M.D.;
ADRIAN GOLDSTEIN, M.D.;
RAYMOND GUTIERREZ, M.D.; LONG
HOANG, M.D.; MICHAEL INGRAM,
M.D.;
SHAYNE JENSEN, M.D.;
PHILLIP JONES, M.D.;
BRUCE KOTTKE, M.D.;
TIM KWIATKOWSKI, M.D.;
MARJORIE LANTUM, M.D.;
RONALD LUBETSKY, M.D.;
MIGUEL MACIAS, M.D.;
RANDY MAHON, M.D.;
SANJEEV MALL, M.D.;
CHRISTIAN GEORGE MAYAUD,
M.D.; DAVID MCCARTHER, M.D.;
GHASSAN ADNAN MOHSEN, M.D.;
VALINDA NWADIKE, M.D.;
BERNARD OGON, M.D.;
ANJUM QURESHI, M.D.;
VIJIL RAHULAN, M.D.;
PRASHANTH RAMAKRISHNA RAO,
M.D.; CARY ROSE, M.D.;
ALAN ROSENTHAL, M.D.;
ALEXANDER SCHEUERMANN, M.D.;
VINCENT SCIORTINO, M.D.;
AMJAD SHIHADEH, M.D.;
RITA STARRITT, M.D.;
ANNA DANUTA STEINER, M.D.;
LLOYD STUART, M.D.;
JEAN-PAUL TRAN, M.D.;
SUSY L. VERGOT, M.D.;
CHERYL WINGATE, M.D.;
CLAUDETTE ZAREMBA, M.D.,

Defendants.

This action is brought on behalf of the United States of America by Brady McFarland ("Mr. McFarland") pursuant to the *qui tam* provisions of the civil False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*

## I.  INTRODUCTION

1.     The federally-funded Tricare program provides healthcare insurance and peace of mind for the United States armed forces, including active duty service members, retired service members, and their dependents.   For the health care providers who offer these essential healthcare services, the Tricare program presents an opportunity to touch the lives of the men and women who selflessly serve their country.   Tricare currently spends over $40 billion per year on healthcare.   Given the magnitude of the government's yearly healthcare expenditures, some unscrupulous healthcare providers attempt to line their pockets with reimbursements for services that are not medically necessary.   This case involves one of those instances where pharmacies and doctors, entrusted to provide necessary healthcare services and ensure honest billing to the government, abused that trust.   This case exposes fraudulent schemes by seven compounding pharmacies, eleven marketing companies and individuals, 51 teledoctors, and one other related defendant to provide, promote, and prescribe medically unnecessary pain creams, scar creams, and wellness capsules to Tricare beneficiaries, at a cost to the public fisc of as much as $62,000 for a single prescription.

2.     Plaintiff-Relator Mr. McFarland is a marketing representative for Florida Pharmacy Solutions ("FPS"), a pharmacy that specializes in selling compounded drugs nationwide.   Mr. McFarland has been employed at FPS since 2013.   From his work as a marketing representative at FPS and based on his review of documents in the course of his employment, Mr. McFarland has learned that FPS and several other pharmacies specializing in

compounded drugs (the "Compounding Pharmacy Defendants")[1] have paid illegal kickbacks to marketing companies and individuals (the "Marketing Defendants")[2] and the teledoctors the marketing companies employ (the "Prescribing Teledoctor Defendants")[3] and to Defendant Ankle and Foot Centers of Georgia (collectively, the "Defendants") to promote and to prescribe medically unnecessary (and exorbitantly expensive) pain creams, scar creams, and wellness capsules. These kickback schemes specifically target beneficiaries of the Tricare program.

3.      Compounding pharmacies are pharmacies that provide precise combinations or compounds of drugs prescribed by doctors for patients with very specific needs that cannot be met by commercially available drugs.   Insurance providers, including Tricare, compensate compounding pharmacies for compounded medications based upon the cost of each separate drug in the medication.   The amount received varies depending on the quantity and types of drugs used.   For a pain or scar cream, for example, a compounding pharmacy can maximize its profits by including more drugs in the compound and including the drugs with the highest profit margins.

4.      The Defendants' schemes operate as follows:  First, the Compounding Pharmacy Defendants offer illegal kickbacks to the Marketing Defendants to induce them to contact Tricare beneficiaries and promote medically unnecessary compounded pain creams, scar creams, and wellness capsules to them.   The Compounding Pharmacy Defendants formulate these compounded creams and capsules to include medications that serve only to inflate the price of the prescriptions and to maximize the Compounding Pharmacy Defendants' profits.  A single

---

[1] *See infra* Part III(B) for background on the seven Compounding Pharmacy Defendants.

[2] *See infra* Part III(C) for background on the eleven Marketing Defendants.

[3] *See infra* Part III(E) for background on the 51 Prescribing Teledoctor Defendants.

prescription for these pain creams, scar creams, and wellness capsules can cost Tricare as much as $62,000.

5.    The Marketing Defendants identify Tricare beneficiaries and contact them (unsolicited) by telephone, pretending to be associated with the Tricare program. Alternatively, the Marketing Defendants receive referrals from telemarketing companies that also pretend to be associated with Tricare. Claiming that they are conducting a study for Tricare, the Marketing Defendants promote the pain creams, scar creams, and wellness capsules to the Tricare beneficiary. If a Tricare beneficiary expresses any interest in the medications, the Marketing Defendant immediately puts the beneficiary in contact with a Prescribing Teledoctor Defendant on a marketing companies' payroll, instead of referring the beneficiary to his or her primary care physician. After a single telephone conversation with a Tricare beneficiary with whom the Prescribing Teledoctor Defendant has had no previous interaction, the Teledoctor signs a "prescription script" which has the components of the compounded creams and capsules pre-printed on it. The Prescribing Teledoctor Defendants often write these prescriptions without even asking the Tricare beneficiaries if they want them.

6.    The Marketing Defendants then send the prescriptions to the Compounding Pharmacy Defendants, which ship the creams and capsules to the beneficiaries and receive tens of thousands of dollars per prescription in reimbursement from Tricare.

7.    The Compounding Pharmacy Defendants pay as much as 25 percent of the total Tricare reimbursement amount as kickbacks to the Marketing Defendants for each paid prescription. On information and belief, the Compounding Pharmacy Defendants also offer the Prescribing Teledoctor Defendants illegal kickbacks in the form of compensation for signed paid

prescriptions or referrals of Tricare beneficiaries for unsolicited and unnecessary consultations, for which the Teledoctors can additionally bill Tricare, or both.

8. Many Tricare beneficiaries refuse to accept the pain creams, scar creams, or wellness capsules, notwithstanding the Marketing Defendants' and Prescribing Teledoctor Defendants' aggressive promotion of the medications. To ensure that Tricare beneficiaries will not cancel prescriptions before they can be filled and shipped, the Compounding Pharmacy Defendants routinely reduce or fail to collect required co-pays for the pain creams, scar creams, and wellness capsules, in violation of federal regulations.

9. At least one of the Compounding Pharmacy Defendants, specifically FPS, urges the Teledoctors to whom it pays kickbacks to sign an "auto refill" authorization form so that it can continue to charge patients (and by extension Tricare) for refills of the medically unnecessary medications at periodic intervals.

10. In a variation of the scheme designed to conceal the Defendants' fraud, the Compounding Pharmacy Defendant that initially receives the prescription from the Marketing Company or Teledoctor transfers the prescription to a second Compounding Pharmacy Defendant. The second Compounding Pharmacy Defendant fills the prescription, bills Tricare, and provides kickbacks to the representative of the Marketing Company. On information and belief, the second Compounding Pharmacy Defendant also provides a kickback to the first Compounding Pharmacy Defendant for the referral. This variation allows the first Compounding Pharmacy Defendant to reduce its Tricare billing in order to avoid suspicion that it is overcharging the program. This variation may also be used if the first Compounding Pharmacy Defendant is not licensed in the Tricare beneficiary's state of residence.

11.     The Compounding Pharmacy Defendants, Marketing Defendants, and Prescribing Teledoctor Defendants violated the False Claims Act each time they submitted or knowingly caused to be submitted a claim for reimbursement to Tricare for these medications or the Teledoctor consultations to prescribe them. First, each of these claims was false because it was for a medically unnecessary product or service. Second, each of these claims was false because the Defendants were paying and/or accepting illegal kickbacks in violation of the Anti-Kickback Statute, and the Compounding Pharmacy Defendants and Prescribing Teledoctor Defendants falsely certified that they were in compliance with the Anti-Kickback Statute as a condition of payment for each claim they submitted. Third, many of the claims violated the False Claims Act for the additional reason that the Compounding Pharmacy Defendants and Prescribing Teledoctor Defendants routinely waived or reduced co-pays in violation of Tricare regulations and the Anti-Kickback Statute. Neither the Compounding Pharmacy Defendants nor the Prescribing Teledoctor Defendants are entitled to reimbursement on any of these claims.

12.     On behalf of the United States Government, Mr. McFarland, as a relator under the False Claims Act, seeks damages and civil penalties.

## II.     JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

14.     This Court has personal jurisdiction over each named Defendant because, *inter alia*, the Defendants transacted business in this District; reside in this District; engaged in wrongdoing in this District; caused the submission of false or fraudulent claims in this District; and/or conspired to cause the submission of false or fraudulent claims in this District.

15.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c). During the relevant time period, a substantial portion of the events

complained of and giving rise to Plaintiff's claims occurred in this District in violation of 31 U.S.C. § 3729 and § 3730.  31 U.S.C. § 3732(a) further provides for nationwide service of process.

16.     There has been no public disclosure of the allegations herein.  To the extent that there has been a public disclosure unknown to Mr. McFarland, he is the "original source" under 31 U.S.C. § 3730(e)(4).   Mr. McFarland has direct and independent knowledge of the information on which the allegations are based and voluntarily provided the information to the Government before filing this *qui tam* action based on that information. *See* 31 U.S.C. § 3730(e)(4).

## III.   PARTIES

### A.   PLAINTIFF/RELATOR MR. BRADY MCFARLAND

17.     Plaintiff-Relator Mr. McFarland is employed as a regional marketing representative of Defendant FPS in Phoenix, Arizona.  He began working for FPS in 2013.  FPS specifically trained him to market FPS compounds to doctors located near military bases in Arizona.  As a marketing representative, Mr. McFarland's sole compensation is a 25 percent commission for each paid prescription.

### B.   THE COMPOUNDING PHARMACY DEFENDANTS

18.     The following Compounding Pharmacy Defendants have billed Tricare for medically unnecessary prescriptions:

#### 1.     Defendant Florida Pharmacy Solutions

19.     Defendant FPS is a privately-owned, national compounding pharmacy.  Its office is located at 3844 5th Avenue, Zephyrhills, Florida 33542.  FPS registered as a domestic for profit corporation in the State of Florida on August 23, 2012.  Between 2013 and January 2015,

its total revenues from its compounded drugs totaled an estimated $50 million. Approximately 80 percent of its revenues during this period came from Tricare.

### 2. Defendant Paradigm Healthcare Solutions LLC d/b/a Athena Specialty Pharmacy

20.     Defendant Paradigm Healthcare Solutions LLC d/b/a Athena Specialty Pharmacy ("Athena") is a privately-owned, national compounding and retail pharmacy based in Mount Juliet, Tennessee. Its office is located at 2025 North Mount Juliet Road, Suite 100, Mount Juliet, Tennessee 37122. Athena is a limited liability corporation registered under the laws of the State of Missouri. Athena has partnered with Defendant 1stCare MD, a telemedicine company, to provide compounded drugs, including compounded prescription creams.

### 3. Defendant Destrehan Discount Pharmacy

21.     Defendant Destrehan Discount Pharmacy ("Destrehan") is a privately-owned compounding pharmacy. Its office is located at 3001 Ormond Boulevard #A, Destrehan, Louisiana 70047. Destrehan is an organization incorporated under the laws of the State of Louisiana. Destrehan has partnered with Defendant 1stCare MD to provide compounded drugs, including compounded prescription creams.

### 4. Defendant Custom Pharmacy Solutions LLC

22.     Defendant Custom Pharmacy Solutions LLC ("Custom") is a compounding pharmacy located in Hoover, Alabama. Its office is located at 2637 Valleydale Road, Hoover, Alabama 35244. It is licensed in over 40 states and is a limited liability corporation registered under the laws of the State of Connecticut. Custom currently focuses its business on topical compounded medications.

### 5.    Defendant Physician Specialty Pharmacy LLC

23.    Defendant Physician Specialty Pharmacy LLC ("Physician Specialty") is a compounding pharmacy located in Pensacola, Florida.  Its office is located at 6258 North W Street, Pensacola, Florida 32505.  It is a limited liability corporation registered under the laws of the State of Florida.

### 6.    Defendant TESTFORTHAT, LLC d/b/a Rejuvenx Pharmacy

24.    Defendant TESTFORTHAT, LLC d/b/a Rejuvenx Pharmacy ("Rejuvenx") is a compounding pharmacy located in Greenville, South Carolina.  Its office is located at 210 Brendan Way, Greenville, South Carolina 29615.  Rejuvenx is a limited liability corporation registered under the laws of the State of South Carolina.

### 7.    Defendant Prescription Shoppes, LLC d/b/a The Medicine Shoppe

25.    Defendant Prescription Shoppes, LLC d/b/a The Medicine Shoppe ("The Medicine Shoppe") is a pharmacy putatively owned by Samir Amin, who also serves as the pharmacy's chief pharmacist.  Although The Medicine Shoppe appears to be a full-service retail pharmacy, it also compounds drugs.  The Medicine Shoppe is a limited liability corporation registered under the laws of the State of Florida.  Medicine Shoppe® Pharmacy No. 1546, the specific location of The Medicine Shoppe involved in this scheme, is located at 114 Broadway, Kissimmee, Florida 34741.

### C.    THE MARKETING DEFENDANTS

26.    The following Marketing Defendants have (1) employed and/or contracted with the Prescribing Teledoctor Defendants who have prescribed medically unnecessary prescriptions filled by the Compounding Pharmacy Defendants; and (2) in some instances, also served as a liaison between the Compounding Pharmacy Defendants and other Marketing Defendants or doctors:

### 1.   Defendant 1stCare MD

27.     Defendant 1stCare MD ("1stCare") is a nationwide marketing company located at 11107 Highway 90 East, Kingsbury, Texas 78638. 1stCare registered as a domestic corporation in the State of Nevada on June 11, 2013. The company employs teledoctors to provide consultations, advice, prescriptions, or referrals via the internet, telephone, or video conference. Although 1stCare treats a variety of conditions, it primarily markets compounded creams prescribed for pain reduction.

### 2.   Defendant Complete Healthcare Concierge

28.     Defendant Complete Healthcare Concierge ("Complete Healthcare") is a nationwide marketing company with its principal address located at 12718 Oak Run Court, Boynton Beach, Florida 33436. Complete Healthcare registered as a domestic for profit corporation in the State of Florida on June 18, 2013.

### 3.   Defendant Virtual HealthCare, Inc.

Defendant Virtual HealthCare, Inc. ("Virtual HealthCare") is a marketing company with its principal address and mailing address located at 3631 Whispering Cypress Lane, Boynton Beach, Florida 33435. Virtual HealthCare registered as a domestic for profit corporation in the State of Florida on September 17, 2014.

### 4.   Defendant HouseCalls 24/7

29.     Defendant HouseCalls 24/7 ("HouseCalls") is a nationwide marketing company based in Rincon, Georgia. Its principal address is 808 Plantation Drive, Rincon, Georgia 31326. Its website is http://www.housecalls247.com.

### 5.   Defendant Mediverse LLC

30.     Defendant Mediverse LLC ("Mediverse") is a marketing company that has partnered with Defendant 1stCare. It is a limited liability company registered in the State of

Florida. Its principal address is 9860 South Thomas Drive, Unit 1806, Panama City Beach, Florida 32408.

### 6.    Defendant Balanced Rx LLC

31.    Defendant Balanced Rx LLC ("Balanced Rx") is a marketing company with its principal address located at 1413 South Howard Avenue, Tampa, Florida 33606. It is a limited liability company registered in the State of Florida. The company manager is Mike Gordon, who is listed as the marketing representative on many of the prescription scripts sent to FPS.

### 7.    Defendant USA Pharmaceutical Group LLC

32.    Defendant USA Pharmaceutical Group LLC ("USAPharm") is a marketing company owned by Bram Kane. Bram Kane is listed as the marketing representative on many of the prescription scripts sent to FPS. USAPharm is a limited liability company registered in the State of Florida. Its principal address is 123 Northwest 13th Street, Suite 307, Boca Raton, Florida 33432.

### 8.    Defendant NexGen Medcare LLC

33.    Defendant NexGen Medcare LLC ("NexGen") is a marketing company. It is a limited liability company registered in the State of Florida. Its principal address is 7351 Wiles Road, Suite 203, Coral Springs, Florida 33067.

### 9.    Defendant De Novo Medical Marketing LLC

34.    Defendant De Novo Medical Marketing LLC ("De Novo") is a marketing company owned by DB Business Group. De Novo is a limited liability company registered in the State of Florida. Its principal address is 104 Business Park Drive, Ridgeland, Mississippi 39201. Todd Domangue is a marketing representative for De Novo. Mr. Domangue is also the Chief Operating Officer of Defendant Ankle and Foot Centers of Georgia. De Novo markets the products of the Compounding Pharmacy Defendants to Prescribing Teledoctor Defendants.

### 10.    Defendant Melonie Kotchey

35.    Defendant Melonie Kotchey is an employee of FPS and possibly Mediverse. Melonie Kotchey resides at 22 Ann Street, Pittsburgh, Pennsylvania 15223-2001. She has been successful in marketing pain creams, scar creams, and wellness capsules.

### 11.    Defendant Wayne Wilkerson

36.    Defendant Wayne Wilkerson is a sales representative for FPS. Wayne Wilkerson owns Karma Wellness Spa, located at 5959 Shallowford Road, Suite 103, Chattanooga, Tennessee 37421. He has been very successful in marketing compounded creams.

### D.    RELATED DEFENDANT – ANKLE AND FOOT CENTERS OF GEORGIA

37.    Defendant Ankle and Foot Centers of Georgia ("Ankle and Foot Centers") is a podiatry practice located in 19 cities throughout Georgia. Its Chief Operating Officer is Mr. Domangue, who is also a marketing representative for Defendant De Novo, one of the Marketing Defendants.    On information and belief, Mr. Domangue, as a marketing representative, receives a kickback from De Novo or FPS for every prescription prescribed by doctors at Defendant Ankle and Foot Centers.

### E.    PRESCRIBING TELEDOCTOR DEFENDANTS

38.    The following Prescribing Teledoctor Defendants have written medically unnecessary prescriptions for pain creams, scar creams, and/or wellness capsules that have been filled by the Compounding Pharmacy Defendants and reimbursed by Tricare:

### 1.    Defendant Dr. Frank Amico

39.    Defendant Dr. Frank Amico is a doctor located in Cherry Hill, New Jersey.

### 2.    Defendant Dr. Matthew Thomas Aney

40.    Defendant Dr. Matthew Thomas Aney is a doctor located in Wytheville, Virginia.

### 3.     Defendant Dr. Aimie Apigian

41.     Defendant Dr. Aimie Apigian is a doctor located in Portland, Oregon.

### 4.     Defendant Dr. Jason Beck

42.     Defendant Dr. Jason Beck is a doctor located in Lucedale, Mississippi.

### 5.     Defendant Dr. Nicole Caldwell

43.     Defendant Dr. Nicole Caldwell is a doctor located in Commerce City, Colorado.

### 6.     Defendant Lauren Carrico-Vargo

44.     Defendant Lauren Carrico-Vargo is a nurse practitioner located in Columbia, South Carolina.

### 7.     Defendant William Clearfield

45.     Defendant William Clearfield is a nurse practitioner located in Sparks, Nevada.

### 8.     Defendant Candace Craven

46.     Defendant Candace Craven is a nurse practitioner located in Chattanooga, Tennessee.

### 9.     Defendant Dr. Lorraine De Blanche

47.     Defendant Dr. Lorraine De Blanche is a doctor located in Little Rock, Arkansas.

### 10.     Defendant Dr. Joshua Dietzer

48.     Defendant Dr. Joshua Dietzer is a doctor located in Tallahassee, Florida.

### 11.     Defendant Toni Dobson

49.     Defendant Toni Dobson is a nurse practitioner located in Chattanooga, Tennessee.

### 12.     Defendant Dr. Bryan Doner

50.     Defendant Dr. Bryan Doner is a doctor located in Kittanning, Pennsylvania.

### 13.     Defendant Dr. Jeffrey Durgin

51.     Defendant Dr. Jeffrey Durgin is a doctor located in Midland, Texas.

### 14.     Defendant Dr. Roxanne Edwards

52.     Defendant Dr. Roxanne Edwards is a doctor located in New Smyrna Beach, Florida.

### 15.     Defendant Dr. Jeffrey Faggard

53.     Defendant Dr. Jeffrey Faggard is a doctor located in Mobile, Alabama.

### 16.     Defendant Dr. Su Fairchild

54.     Defendant Dr. Su Fairchild is a doctor located in Bridgeville, Pennsylvania.

### 17.     Defendant Dr. Sara Garcia

55.     Defendant Dr. Sara Garcia is a doctor located in Boynton Beach, Florida.

### 18.     Defendant Dr. Vitaliy Gavrikov

56.     Defendant Dr. Vitaliy Gavrikov is a doctor located in Norcross, Georgia.

### 19.     Defendant Dr. Adrian Goldstein

57.     Defendant Dr. Adrian Goldstein is a doctor located in San Mateo, California.

### 20.     Defendant Dr. Raymond Gutierrez

58.     Defendant Dr. Raymond Gutierrez is a doctor located in Atlanta, Georgia.

### 21.     Defendant Dr. Long Hoang

59.     Defendant Dr. Long Hoang is a doctor located in Killeen, Texas.

### 22.     Defendant Dr. Michael Ingram

60.     Defendant Dr. Michael Ingram is a doctor located in Panama City, Florida.

### 23.     Defendant Dr. Shayne Jensen

61.     Defendant Dr. Shayne Jensen is a doctor located in Panama City, Florida.

### 24.     Defendant Dr. Phillip Jones

62.     Defendant Dr. Phillip Jones is a doctor located in Corsicana, Texas.

### 25. Defendant Dr. Bruce Kottke

63. Defendant Dr. Bruce Kottke is a doctor located in Lakeland, Florida.

### 26. Defendant Dr. Tim Kwiatkowski

64. Defendant Dr. Tim Kwiatkowski is a doctor located in Durham, North Carolina.

### 27. Defendant Dr. Marjorie Lantum

65. Defendant Dr. Marjorie Lantum is a doctor located in Nashville, Tennessee.

### 28. Defendant Dr. Ronald Lubetsky

66. Defendant Dr. Ronald Lubestky is a doctor located in Miami Beach, Florida.

### 29. Defendant Dr. Miguel Macias

67. Defendant Dr. Miguel Macias is a doctor located in San Antonio, Texas.

### 30. Defendant Dr. Randy Mahon

68. Defendant Dr. Randy Mahon is a doctor located in Williamson, West Virginia.

### 31. Defendant Dr. Sanjeev Mall

69. Defendant Dr. Sanjeev Mall is a doctor located in Las Vegas, Nevada.

### 32. Defendant Dr. Christian George Mayaud

70. Defendant Dr. Christian George Mayaud is a doctor located in Yonkers, New York.

### 33. Defendant Dr. David McCarther

71. Defendant Dr. David McCarther is a doctor located in Lexington, Ohio.

### 34. Defendant Dr. Ghassan Adnan Mohsen

72. Defendant Dr. Ghassan Adnan Mohsen is a doctor located in New Orleans, Louisiana.

### 35. Defendant Dr. Valinda Nwadike

73. Defendant Dr. Valinda Nwadike is a doctor located in Leonardtown, Maryland.

### 36.   Defendant Dr. Bernard Ogon

74.   Defendant Dr. Bernard Ogon is a doctor located in Burlington, New Jersey.

### 37.   Defendant Dr. Anjum Qureshi

75.   Defendant Dr. Anjum Qureshi is a doctor located in Springfield, Missouri.

### 38.   Defendant Dr. Vijil Rahulan

76.   Defendant Dr. Vijil Rahulan is a doctor located in Grandville, Michigan.

### 39.   Defendant Dr. Prashanth Ramakrishna Rao

77.   Defendant Dr. Prashanth Ramakrishna Rao is a doctor located in San Antonio, Texas.

### 40.   Defendant Dr. Cary Rose

78.   Defendant Dr. Cary Rose is a doctor located in Longview, Texas.

### 41.   Defendant Dr. Alan Rosenthal

79.   Defendant Dr. Alan Rosenthal is a doctor located in Carmel, California.

### 42.   Defendant Dr. Alexander Scheuermann

80.   Defendant Dr. Alexander Scheuermann is a doctor located in Boca Raton, Florida.

### 43.   Defendant Dr. Vincent Sciortino

81.   Defendant Dr. Vincent Sciortino is a doctor located in Melbourne, Florida.

### 44.   Defendant Dr. Amjad Shihadeh

82.   Defendant Dr. Amjad Shihadeh is a doctor located in Valparaiso, Indiana.

### 45.   Defendant Dr. Rita Starritt

83.   Defendant Dr. Rita Starritt is a doctor located in La Jolla, California.

### 46.   Defendant Dr. Anna Danuta Steiner

84.   Defendant Dr. Anna Danuta Steiner is a doctor located in Albany, New York.

### 47.   Defendant Dr. Lloyd Stuart

85.   Defendant Dr. Lloyd Stuart is a doctor located in Dawsonville, Georgia.

### 48.   Defendant Dr. Jean-Paul Tran

86.   Defendant Dr. Jean-Paul Tran is a doctor located in Tallahassee, Florida.

### 49.   Defendant Dr. Susy L. Vergot

87.   Defendant Dr. Susy L. Vergot is a doctor located in Chattanooga, Tennessee.

### 50.   Defendant Dr. Cheryl Wingate

88.   Defendant Dr. Cheryl Wingate is a doctor located in Milledgeville, Georgia.

### 51.   Defendant Dr. Claudette Zaremba

89.   Defendant Dr. Claudette Zaremba is a doctor located in Anchorage, Alaska.

## IV.   THE APPLICABLE STATUTES

### A.   THE FALSE CLAIMS ACT

90.   The False Claims Act ("FCA") is the federal government's chief weapon in combating waste, fraud, and abuse of public funds.   In relevant part, it provides for treble damages liability and civil penalties for any entity that:

> (i) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1) (2000) and, as amended, 31 U.S.C. § 3729(a)(1)(A);

> (ii) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B); or

> (iii) "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," *id.* § 3729(a)(3) (1986), and, as amended, 31 U.S.C. § 3729(a)(1)(C).

91.   An entity "knowingly" presents or causes to be presented a false statement where it "(a) has actual knowledge of the information; (b) acts in deliberate ignorance of the truth or falsity of the information; or (c) acts in reckless disregard of the truth or falsity of the

information." 31 U.S.C. § 3729(b) (2006), and, as amended, 31 U.S.C. § 3729(b)(1)(A). The FCA does not require proof of a specific intent to defraud. 31 U.S.C. § 3729(b)(1)(B).

92.     In addition, the FCA provides that a person "may bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1).

93.     In March 2010, Congress codified existing case law by directing that "a claim that includes items or services resulting from a violation of [the Anti-Kickback Statute] constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a-7b(g).

### B.   THE ANTI-KICKBACK STATUTE

94.     The Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), is a criminal statute that makes it illegal for individuals or entities to knowingly and willfully *solicit* or *receive* "any remuneration (including any kickback, bribe, or rebate) . . . in return for purchasing, . . . ordering, . . . or recommending purchasing . . . or ordering any good . . . or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1).   It likewise prohibits knowingly and willfully *offering* or *paying* "any remuneration (including any kickback, bribe, or rebate) . . . to any person to induce such person . . . to purchase, . . . order, . . . or recommend purchasing . . . or ordering any good . . . or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2).

95.     For purposes of the AKS, "remuneration" includes the transfer of anything of value, directly or indirectly, overtly or covertly, in cash or in kind.

96.     The AKS covers any arrangement where any one purpose of the remuneration is to obtain the referral of products to be billed to any "Federal health care program," including Tricare. *See* 42 U.S.C. § 1320a-7b(f) (defining "Federal health care program" as "any plan or

program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government").

## V.    THE GOVERNMENT PROGRAM

### A.    TRICARE

97.    Tricare is a federally funded medical benefit program established by statute. *See* 10 U.S.C. §§ 1071-1110.  Tricare provides healthcare benefits to eligible beneficiaries who are active duty service members, retired service members, and their dependents.

98.    As part of its pharmacy and medical benefits, Tricare pays for compounded drugs. The Defense Health Agency, Express Scripts (the Department of Defense ("DOD") pharmacy benefits manager), and the DOD's managed care support contractors and their subcontractors collectively manage Tricare's pharmacy and medical benefits.  They also manage the processing of pharmacy and medical claims from civilian pharmacy, outpatient, and inpatient providers. Express Scripts in particular contracts with retail pharmacies, negotiates rebates with drug manufacturers and discounts with retail pharmacies, and processes and pays prescription drug claims.

### B.    COMPOUNDING PHARMACIES

99.    Compounding pharmacies provide precise combinations or compounds of drugs prescribed by doctors for patients with very specific needs that cannot be met by commercially available medications.  Each ingredient in the drugs prepared by compounding pharmacies is approved by the Food and Drug Administration ("FDA"), but the actual purpose for which the compounded drugs are prescribed is not always FDA-approved.

100.    Generally, state boards of pharmacy have primary responsibility for day-to-day oversight of licensed pharmacies that compound drugs in accordance with section 503A of the Federal Food, Drug, and Cosmetic Act, although the FDA retains some authority over their

operations.   Compounding pharmacies, similar to other types of pharmacies, are eligible to supply drugs to beneficiaries of Tricare.

### C.   TRICARE REIMBURSEMENT OF COMPOUNDING PHARMACIES

101.    Tricare covers all FDA-approved products that make up a compounded drug.  *See* 32 C.F.R. §§ 199.2, 199.4(g)(15)(i)(A).  Tricare reimburses pharmacies for each ingredient in a compounded drug at the average wholesale price minus a negotiated discount for compounded drug prescriptions dispensed at retail pharmacies.   The total cost of a compounded drug prescription consists of the cost of the individual drug ingredients, a dispensing fee, and an additional fee for the pharmacist's effort to compound the drug.  To the extent practicable, the regulatory authority implementing Tricare provides reimbursement to healthcare providers applying the same reimbursement scheme that Medicare applies.  10 U.S.C. § 1079(j)(2) (2006), *redesignated as* 10 U.S.C. § 1079(i)(2), Pub. L. No. 113-291, Sec. 703 (Dec. 19, 2014).

#### 1.    Medical Necessity

102.    Tricare reimburses only for "medically necessary services and supplies required in the diagnosis and treatment of illness or injury." 32 C.F.R. § 199.4(a)(1)(i).

103.    Tricare also prohibits practices such as submitting claims for services which are not medically necessary, consistently furnishing medical services that do not meet accepted standards of care, and failing to maintain adequate medical records.  32 C.F.R. § 199.9(b)(3)-(b)(5).

#### 2.    Co-payment Requirement

104.    The co-payment which Tricare beneficiaries must pay depends on both the beneficiary's status and the type of service or product provided.   Co-payments may only be waived for certain classes of beneficiaries.  32 C.F.R. § 199.17.  For the compounded drugs

involved in Defendants' scheme, non-active duty service members and their dependents must pay a $20 co-pay.

105.    Requiring beneficiaries to pay for part of the services they receive discourages patients from accepting services they do not need. The co-payment is intended to minimize costs to federal healthcare programs and beneficiaries by incentivizing beneficiaries to be better health care consumers – selecting services because they are medically needed, rather than simply because they are free. *See* Department of Health and Human Services Office of Inspector General Special Fraud Alert, 59 Fed. Reg. 65372-01, at 65375 (Dec. 19, 1994). It is unlawful to routinely waive co-payments under any federal health insurance program, including Tricare, except as provided by law or regulation. *See, e.g.*, 67 Fed. Reg. 72,896 (Dec. 9, 2002) (routinely waiving co-pays or deductibles violates the FCA, the AKS, and federal and state insurance fraud laws).

106.    The U.S. Department of Health and Human Services has concluded that reducing co-payments for beneficiaries of government healthcare programs, absent a showing of financial hardship, violates the AKS and the FCA. *See* Special Advisory Bulletin, Department of Health and Human Services, Office of Inspector General (Sept. 2014), *available at* https://oig.hhs.gov/fraud/docs/alertsandbulletins/2014/SAB_Copayment_Coupons.        pdf. Additionally, a co-payment waiver based on a failure to collect is prohibited if it is not preceded by a "good faith" collection effort. Special Fraud Alert, 59 Fed. Reg. 65372-01, at 65375; 42 U.S.C. § 1320a-7a(i)(6); 42 C.F.R. § 1003.101.

### 3.    Defendants' Certifications to Tricare

107.    Tricare requires suppliers, physicians, and group providers of healthcare to certify compliance with the AKS, among other federal healthcare laws.

108.   Those submitting insurance claims to Tricare must also certify that the products are "medically indicated and necessary for the health of the patient," that the information on the claims form is "true, accurate and complete," and that the provider "understands that payment and satisfaction of [the] claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws." *See* CMS Form 1500. Additionally, CMS Form 1500 contains the following notice: "Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties." *Id.*

109.   The Compounding Pharmacy Defendants and Prescribing Teledoctor Defendants made these certifications to Tricare at the time of their initial application to become providers and suppliers and regularly recertified this information as a condition of their continued participation.   These certifications were also made with each submission of a claim for reimbursement to Tricare.

## VI.   VIOLATIONS OF THE FALSE CLAIMS ACT

### A.   DEFENDANTS HAVE BILLED TRICARE FOR HUNDREDS OF MILLIONS OF DOLLARS OF MEDICALLY UNNECESSARY TREATMENT

#### 1.   FPS Has Billed for Medically Unnecessary Medications

110.   FPS's scar creams, pain creams, and wellness capsules are not medically necessary. The scar creams are cosmetic; the pain creams are likely inefficacious; and the wellness capsules are essentially multi-vitamins.   Moreover, FPS structures its business to disregard medical necessity by using marketing companies to solicit customers for these medications and by using Pre-Authorization Forms that permit it to change its compounds and

ship refills at will.  Finally, Tricare beneficiaries' frequent rejection of the prescriptions confirms the creams and capsules are not medically necessary.

(a)   **The Scar Creams, Pain Creams, and Wellness Capsules Are Not Medically Necessary**

111.   FPS's cosmetic scar creams are not medically necessary because they are purely cosmetic.  These topical creams are used solely to lighten or eliminate scars on the body, and not to alleviate a medical condition.  The medical efficacy of FPS's pain creams and wellness capsules is also highly dubious.  U.S. Army Major General Richard Thomas, a senior physician who is the director of Tricare, has publicly questioned the government's payments for pain and scar creams and concluded they are unnecessary, *see* "'Free' Pain Meds For Veterans Cost Taxpayers Big Bucks," (May 5, 2015), *available at* http://www.cbsnews.com/news/free-pain-meds-for-veterans-cost-taxpayers-big-bucks/:

> "We're on track this year to spend over $2 billion unless we get our hands around this," said Thomas.  "It's just been astronomical, an explosion of the charges in a relatively short period of time." Virtually all the spending is for products the DOD believes are of dubious clinical benefit, like pain and scar creams.  The cost to taxpayers can be $15,000 for a month supply.

> Major Thomas told us he hasn't been able to find anything in the creams that justify their expense.  The creams are marketed directly to military personnel at "free lunch" events hosted outside the gates of Fort Sam Houston in San Antonio.

> "There's no free lunch here," said Thomas.  "These individuals, their patriotism is directly tied to their paycheck.  They're not helping these soldiers."

112.   FPS's "scar kits" initially consisted of two constituent creams.  Pracasil Plus Gel is the primary ingredient in both creams.  In addition to the Pracasil Plus Gel, FPS added between two and five different drugs to the creams. The addition of these drugs to the Pracasil Plus Gel was unnecessary, as Pracasil Plus Gel—which can be purchased over-the-counter

24

without a prescription—alone is sufficient for scar treatment. FPS added these other drugs in order to make the creams prescription-only and to maximize the profits derived from Tricare reimbursements. Specifically, FPS sought to receive the $11,000 Tricare paid for each one of FPS's "scar kits."

113.   At the end of 2014, FPS began adding still more drugs to its cosmetic scar creams, adding no medically necessary medications but substantially increasing the costs charged to Tricare. For example, one of the creams in FPS's "scar kit" is a "Scar Fade" cream. In 2013 and 2014, this cream consisted of Pracasil Plus Gel, Fluticasone, and Hydroquinone. At the end of 2014, FPS added five additional ingredients to its "Scar Fade" cream: Pentaxifylline, Hyaluronic Acid, Ketotifen, Nifedipine, and Tranilast. FPS knew that the addition of these five drugs at the end of 2014 was unnecessary, but nonetheless added the drugs to obtain the $45,000 payment from Tricare for its "scar kits" (approximately $18,500, $17,500 and $9,000, respectively, for the three constituent creams FPS now includes).

114.   FPS has admitted in training presentations for its marketing representatives that Pracasil Plus Gel alone is sufficient to treat scars. In fact, there are several over-the-counter scar creams containing only Pracasil Plus Gel. These drugs cost approximately $500 for a comparable quantity of cream to that provided in a FPS "scar kit" – far less than the $45,000 Tricare pays per "scar kit." Acknowledging the outrageous cost and lucrativeness of its "scar kit," FPS ostentatiously listed the different treatments for which its prescription creams can be used on a page of its training materials that was decorated with $100 bills.

115.   The medical necessity of FPS's wellness capsules is also highly doubtful. Tricare reimburses FPS between $17,000 and $18,000 for one prescription of these capsules, which

appear to be substantially similar to multivitamins available over-the-counter at a fraction of the cost.

116.    In each instance where FPS billed Tricare for a cosmetic scar cream, an inefficacious pain cream, or wellness capsules, FPS violated the FCA by billing for medically unnecessary prescriptions.

**(b)    FPS's Pre-Authorization Forms Circumvent the Medical Necessity Requirement**

117.    To enable it to increase the price of its creams and capsules at will by adding still more or different drugs to the compounds, FPS uses pre-authorization forms to maintain as much authority in the prescribing process as possible. The use of these forms limits the Teledoctors' ability to ensure that the prescribed creams and wellness capsules are medically necessary.

118.    FPS has two pre-authorization forms. The first pre-authorization form is entitled "Blanket Letter of Authorization" and allows FPS to substitute compounded formulations for patients as it deems necessary, without any discussion with the Teledoctor who signed the prescription or any concern for the medical necessity of the substitutions. It also enables FPS to substitute or add ingredients based on what the patient's insurance will reimburse, rather than the medical necessity of the substitutions or changes. The second pre-authorization form is entitled "Provider Blanket Refill Authorization" and allows FPS to automatically refill prescriptions without contacting the doctor *or* the patient, and thus without consideration of the medical necessity of the refill.

119.    FPS marketing representatives, in concert with the Marketing Defendants, ensure that Teledoctors sign these forms when they first agree to prescribe FPS's creams and wellness capsules. In its training video, FPS explains to its marketing representatives that these pre-authorization forms, particularly the Blanket Letter of Authorization Form, give FPS the power

to "do whatever [it] want[s]" with regard to drug compounding. These pre-authorization forms enable FPS to substitute its compounded formulations with more costly drugs and to continue refilling prescriptions in order to continue charging Tricare. All of this is done without regard for the medical necessity of the drug substitutions, the prescription refills, or the needs of the patient.

**(c)   FPS's Use of Marketing Companies Circumvents the Medical Necessity Requirement for Reimbursement**

120.   A key component of the Compounding Pharmacy Defendants' schemes to obtain payments from Tricare are the partnerships they maintain with the Marketing Defendants. The marketing companies place unsolicited phone calls to Tricare beneficiaries—or receive referrals from telemarketing companies that contact these beneficiaries—and, through their Teledoctors, prescribe pain creams, scar creams, and wellness capsules, often without the beneficiaries' consent. FPS has formed such a partnership with a marketing company, Defendant 1stCare, to increase the payments it receives from Tricare. The process through which 1stCare obtains and treats Tricare beneficiaries does not enable doctors or compounding pharmacies to ensure that the treatment provided is medically necessary.

121.   1stCare's treatment process circumvents the medical necessity requirement for reimbursement by Tricare (and other federal health insurance programs) in three ways. *First*, 1stCare or a telemarketer places unsolicited calls to Tricare beneficiaries without knowing whether these beneficiaries need pain creams, scar creams, or wellness capsules. *Second*, 1stCare introduces Tricare beneficiaries who agree to speak with one of its doctors to a Teledoctor who has no prior physician-patient relationship with the beneficiaries. Thus, the Teledoctors prescribe treatment based solely on a single telephone conversation, which is insufficient to determine the medical necessity of pain creams, scar creams, or wellness capsules

27

for that beneficiary. *Third*, 1stCare sometimes instructs FPS to mail pain creams, scar creams, or wellness capsules without the patients' knowledge or consent and therefore without a medically indicated need.

122.   While 1stCare appears to be the Marketing Defendant with the most lucrative partnership with FPS, other Marketing Defendants have partnered with FPS to increase the payments FPS receives from Tricare.

123.   The Marketing Defendants employ and/or contract with the Prescribing Teledoctor Defendants to prescribe medically unnecessary medications and/or serve as a liaison between FPS and other Marketing Defendants or doctors.

> **(d)     Specific Patient Examples of Marketing Defendants Serving as a Marketer for an FPS Prescription Script**

124.   In the following eleven examples, a Marketing Defendant employed or contracted with a Prescribing Teledoctor Defendant to prescribe a medically unnecessary pain or scar cream or wellness capsules to a Tricare beneficiary. In each case, Tricare is the "payor" and FPS is the "pharmacy" on the prescription script.

125.   1stCare was the telemedicine company that employed or contracted with Dr. Lorraine De Blanche to prescribe a pain cream, RxNumber 139771, to patient T.P. Tricare paid $4,398.32 on or about May 4, 2015 for this medically unnecessary pain cream.

126.   Complete Healthcare was the telemedicine company that employed or contracted with Dr. Lorraine De Blanche to prescribe a scar cream, RxNumber 135315, to patient D.F. Tricare paid $18,461.20 on or about May 12, 2015 for this medically unnecessary scar cream.

127.   Virtual Healthcare was the telemedicine company that employed or contracted with Dr. Sara Garcia to prescribe a pain cream, RxNumber 140040, to patient G.M. Tricare paid $2,249.29 on or about May 26, 2015 for this medically unnecessary pain cream.

128.   HouseCalls was the telemedicine company that employed or contracted with Dr. Rita Starritt to prescribe a pain cream, RxNumber 140048, to patient R.C.   Tricare paid $8,722.65 on or about April 30, 2015 for this medically unnecessary pain cream.

129.   Mediverse was the marketing company that marketed to Dr. Matthew Thomas Ancy to prescribe a pain cream, RxNumber 133861, and scar cream, RxNumber 133865, for patient D.L.   Tricare paid $19,734.38 on or about April 7, 2015 for these medically unnecessary creams.

130.   Balanced Rx was the marketing company that employed or contracted with Ms. Dana Omega Whaley to prescribe three scar creams, RxNumbers 132515, 132516, and 132517, for patient W.W.   Tricare paid $35,397.80 on or around March 13, 2015 for these medically unnecessary scar creams.

131.   USAPharm was the marketing company for Dr. Su Fairchild's prescriptions for a pain cream, RxNumber 139968, for patient N.B.   Tricare paid $17,520.07 on or about May 7, 2015 for this medically unnecessary pain cream.

132.   NexGen was the marketing company for Dr. Marjorie Lantum's prescriptions for a pain and a scar cream, RxNumbers 140031 and 140036, for patient S.J.   Tricare paid $19,071.08 on or about May 18, 2015 for these medically unnecessary pain and scar creams.

133.   Denovo LLC was the marketing company for the prescription of a doctor employed by Defendant Ankle and Foot Centers, who prescribed a pain cream, RxNumber C134204, for patient B.H.   Tricare paid $3,644.39 on or about April 4, 2015 for this medically unnecessary pain cream.

134. Melonie Kotchey was the marketer for Dr. Frank Amico's prescription for a scar cream, RxNumber 139513, for patient M.M. Tricare paid $9,902.57 on or about April 22, 2015 for the medically unnecessary scar cream.

135. Wayne Wilkerson was the marketer for nurse practitioner Candace Craven's prescription for a scar cream, RxNumber 123178, for patient J.L. Tricare paid $14,348.56 on or about September 8, 2014 for the medically unnecessary scar cream.

    **(e) Tricare Beneficiaries' Frequent Rejection of the Prescriptions Confirms the Creams and Capsules Are Not Medically Necessary**

136. Tricare beneficiaries have rejected the unsolicited prescriptions for the medications prescribed by Prescribing Teledoctor Defendants to be fulfilled by FPS, serving as further evidence that there is no medically indicated need for the compounded creams and wellness capsules.

137. For example, on May 23, 2015, patient G.P. rejected his pain cream prescription, RxNumber 133176, from Dr. Qureshi and FPS because he and his wife did not want to be a part of the "scam"; they did not know the doctor who prescribed the medication; and they believed the doctor needed "to be put in jail."

138. On April 17, 2015, patient M.S. declined his pain and scar creams prescription, RxNumber 135705, from Dr. Beck because "she didn't feel right receiving scripts without talking to a doctor."

139. On March 23, 2015, patient B.M. declined her wellness capsules and pain cream prescription, RxNumber 133240, from Dr. De Blanche because she "[did] not want any pain meds" and indicated that she believed the prescribing of the medications was "a scam."

140.    That Tricare beneficiaries have rejected the medications for the above reasons demonstrates that there is no medical need for them and no reason to charge Tricare such exorbitant prices.

### 2.    Transferee Compounding Pharmacy Defendants Have Billed Tricare for Medically Unnecessary Prescriptions

#### (a)    Overview of the Scheme

141.    A variation of the Defendants' scheme involves the transfer of prescriptions from FPS to another Compounding Pharmacy Defendant.   Each time the transferee Compounding Pharmacy Defendant billed Tricare for a prescription for the medications, it billed Tricare for a product that was not medically necessary.   All of the secondary Compounding Pharmacy Defendants have received prescriptions from FPS and are believed to have billed Tricare for medically unnecessary prescriptions.

#### (b)    Specific Patient Examples of Transferee Compounding Pharmacy Defendants Billing Tricare for Medically Unnecessary Prescriptions

142.    In the following seven examples, FPS transferred prescriptions for compounded creams and/or wellness capsules to a secondary Compounding Pharmacy Defendant, which is believed to have then billed Tricare for the medically unnecessary prescriptions.   In each case, FPS was the transferring pharmacy, Tricare was the "Payor," and the status of the script was "Billed and Transferred."

143.    On May 11, 2015, FPS transferred a medically unnecessary prescription for wellness capsules, RxNumber 140228, for patient R.B. to Athena to be filled and billed to Tricare.

144.    On February 11, 2015, FPS transferred a medically unnecessary prescription for pain cream, RxNumber 131201, for patient C.B. to Destrehan to be filled and billed to Tricare.

31

145.　On May 12, 2015, FPS transferred a medically unnecessary prescription for pain cream, RxNumber 140385, for patient A.V. to Custom to be filled and billed to Tricare.

146.　On May 15, 2015, FPS transferred a medically unnecessary prescription for pain cream and wellness capsules, RxNumber 140334, for patient J.B. to Physician Specialty to be filled and billed to Tricare.

147.　On March 23, 2015, FPS transferred a medically unnecessary prescription for pain cream, RxNumber 133323, for patient A.M. to Rejuvenx to be filled and billed to Tricare.

148.　On May 11, 2015, FPS transferred a medically unnecessary prescription for pain cream, RxNumber 140061, for patient S.T. to The Medicine Shoppe to be filled and billed to Tricare.

### 3.　The Prescribing Teledoctors Have Prescribed Medically Unnecessary Pain and Scar Creams and Wellness Capsules and Billed Tricare for Medically Unnecessary Consultations

#### (a)　Overview of the Scheme

149.　The Prescribing Teledoctor Defendants often conduct "consultations" with Tricare beneficiaries that are nothing more than long-distance telephone calls. When prescribing medication to treat a scar, in particular, it is impossible that a mere telephone call from a doctor located hours away could suffice to determine the medication needed to remedy the patient's condition.

150.　Each time a Compounding Pharmacy Defendant billed Tricare for medically unnecessary medications prescribed by a Prescribing Teledoctor Defendant, both the Compounding Pharmacy and Prescribing Teledoctor Defendant violated the FCA. The Prescribing Teledoctor Defendants additionally violated the AKS each time they billed Tricare for a consultation to prescribe these medically unnecessary medications.

(b)   **Specific Examples of Prescribing Teledoctor Defendants Prescribing Medically Unnecessary Treatment to Tricare Beneficiaries**

151.   The following are examples where the Prescribing Teledoctor Defendants have written prescriptions for compounded creams and/or wellness capsules to be filled by FPS. For each paid prescription script, Tricare is the "Payor."

152.   On April 22, 2015, Dr. Frank Amico wrote a pain cream prescription, RxNumber 139513, for M.M, a patient located in Millvale, New Jersey. Dr. Amico's office is located in Cherry Hill, New Jersey. Tricare paid $9,902.52 on or about May 4, 2015 for this medically unnecessary pain cream.

153.   On March 24, 2015, Dr. Matthew Thomas Aney wrote pain and scar cream prescriptions, RxNumbers 133865 and 133861, for D.L., a patient located in Yuma, Arizona. Dr. Aney's office is located in Wytheville, Virginia. Tricare paid $19,734.38 on or about April 7, 2015 for these medically unnecessary pain and scar creams.

154.   On April 6, 2015, Dr. Aimie Apigian wrote pain cream, scar cream, and wellness capsules prescriptions, RxNumber 139501, 139506, and 139510 for J.A., a patient located in Beaverton, Oregon. Dr. Apigian contracted with or was employed by 1stCare to prescribe these medications. Tricare paid $24,448.30 on or about May 12, 2015 for the medically unnecessary pain cream, scar cream, and wellness capsules.

155.   On March 18, 2015, Dr. Jason Beck wrote a pain cream prescription, RxNumber 133087, for R.H., a patient located in Dothan, Alabama. Dr. Beck's office is located in Lucedale, Mississippi. Tricare paid $5,537.34 on or about March 29, 2015 for this medically unnecessary pain cream.

156.   On February 18, 2015, Dr. Nicole Caldwell wrote a scar cream prescription, RxNumber 136191, for D.M., a patient located in Albuquerque, New Mexico. Dr. Caldwell's

office is located in Commerce City, Colorado.  Tricare paid $9,854.13 on or about May 4, 2015 for this medically unnecessary scar cream.

157.   On February 5, 2015, Lauren Carrico-Vargo wrote a scar cream prescription, RxNumber 131034, for A.E., a patient located in Sumter, South Carolina.  Tricare paid $14,300.44 on or about February 19, 2015 for this medically unnecessary scar cream.

158.   On April 1, 2015, William Clearfield wrote scar cream and wellness capsule prescriptions, RxNumbers 135087 and 135089, for G.S., a patient located in Pittsburgh, Pennsylvania.  Mr. Clearfield's office is located in Sparks, Nevada.  Tricare paid $36,066.21 on or about April 13, 2015 for the medically unnecessary scar cream and wellness capsules.

159.   On September 8, 2014, Candace Craven wrote pain and scar cream prescriptions, RxNumbers 122702 and 122705, for R.M., a patient located in Clarksville, Tennessee.  Ms. Craven's office is located in Chattanooga, Tennessee.  Tricare paid $28,460 on or about April 20, 2015 for the medically unnecessary scar and pain creams.

160.   On April 7, 2014, Dr. Lorraine De Blanche wrote a pain cream prescription, RxNumber 139771, for T.P., a patient located in Riverview, Florida.  Dr. De Blanche's office is located in Little Rock, Arkansas.  Tricare paid $4,398.32 on or about May 4, 2015 for this medically unnecessary pain cream.

161.   On March 19, 2015, Dr. Joshua Dietzer wrote pain cream, scar cream and wellness capsules prescriptions, RxNumbers 133140, 133143, 133144, and 133147 for D.P., a patient located in Jacksonville, Florida.  Dr. Dietzer's office is located in Tallahassee, Florida.  Tricare paid $38,836.38 on or about May 1, 2015 for these medically unnecessary pain and scar creams and wellness capsules.

162.   On October 30, 2014, Toni Dobson wrote pain cream, scar cream, and wellness capsules prescriptions, RxNumbers 126827, 126828, and 126830, for J.H., a patient located in San Diego, California. Ms. Dobson's office is located in Chattanooga, Tennessee. Tricare paid $18,656.47 on or about May 3, 2015 for these medically unnecessary pain and scar cream and wellness capsules.

163.   On April 7, 2015, Dr. Bryan Doner wrote a pain cream prescription, RxNumber 129834, for R.S., a patient located in North Apollo, Pennsylvania. Dr. Doner's office is located in Kittanning, Pennsylvania. Tricare paid $2,424.27 on or about April 23, 2015 for this medically unnecessary pain cream.

164.   On March 20, 2015, Dr. Jeffrey Durgin wrote a pain cream prescription, RxNumber 133334, for B.K., a patient located in Killeen, Texas. Dr. Durgin's office is located in Midland, Texas. Tricare paid $5,993.52 on or about March 23, 2015 for this medically unnecessary pain cream.

165.   On April 29, 2015, Dr. Roxanne Edwards wrote a pain cream prescription, RxNumber 139908, for L.R., a patient located in St. Petersburg, Florida. Dr. Edward's office is located in New Smyrna Beach, Florida. Tricare paid $4,309.70 on or about May 1, 2015 for this medically unnecessary pain cream.

166.   On April 23, 2015, Dr. Jeffrey Faggard wrote a pain cream prescription, RxNumber 137041, for M.K., a patient located in Thomasville, Alabama. Tricare paid $5,357.37 on or about May 14, 2015 for this medically unnecessary pain cream.

167.   On April 1, 2015, Dr. Su Fairchild wrote pain and scar cream prescriptions, RxNumbers 135092 and 135094, for C.B., a patient located in Cheswick, Pennsylvania. Dr. Fairchild either contracted with or was employed by Housecalls to prescribe these medications.

Tricare paid $23,819.30 on or around April 3, 2015 for these medically unnecessary pain and scar creams.

168.   On March 12, 2015, Dr. Sara Garcia wrote pain cream, scar cream, and wellness capsules prescriptions, RxNumbers 132732, 132735, and 132737, for P.E., a patient located in Interlachen, Florida.   Dr. Garcia's office is located in Boynton Beach, Florida.   Tricare paid $25,229.06 on or about March 16, 2015 for these medically unnecessary pain and scar creams and wellness capsules.

169.   On March 20, 2015, Dr. Vitaliy Gavrikov wrote a pain cream prescription, RxNumber 133533, for L.P., a patient located in Centreville, Georgia.   Tricare paid $9,533.36 on or about March 27, 2015 for this medically unnecessary pain cream.

170.   On April 9, 2015, Dr. Adrian Goldstein wrote a pain cream prescription, RxNumber 136360, for J.B., a patient located in Fort Polk, Louisiana.   Dr. Goldstein's office is located in San Mateo, California.   Tricare paid $14,874.62 on or about April 17, 2015 for this medically unnecessary pain cream.

171.   On March 26, 2015, Dr. Raymond Gutierrez wrote a pain cream prescription, RxNumber 135030, for D.T., a patient located in Albany, Georgia.   Dr. Gutierrez's office is located in Atlanta, Georgia.   Tricare paid $5,602.33 on or about April 15, 2015 for this medically unnecessary pain cream.

172.   On March 23, 2015, Dr. Long Hoang wrote pain and scar cream prescriptions, RxNumbers 133499 and 133500, for C.E., a patient located in Killeen, Texas.   Dr. Hoang contracted with or was employed by 1stCare to prescribe these medications.   Tricare paid $23,711.20 on or about March 26, 2015 for these medically unnecessary pain and scar creams.

173.    On March 10, 2015, Dr. Michael Ingram wrote scar cream prescriptions, RxNumber 132525 and 132526, for E.M., a patient located in Panama City, Florida. Dr. Ingram contracted with Balanced Rx to prescribe these medications. Tricare paid $28,432.74 on or about April 14, 2015 for these medically unnecessary scar creams.

174.    On January 1, 2015, Dr. Shayne Jensen wrote a scar cream prescription, RxNumber 129481, for D.M., a patient located in Panama City, Florida. Dr. Jenson contracted with Balanced Rx to prescribe these medications. Tricare paid $13,699.89 on or about January 6, 2015 for this medically unnecessary scar cream.

175.    On March 12, 2015, Dr. Phillip Jones wrote a scar cream prescription, RxNumber 132807, for D.B., a patient located in El Paso, Texas. Dr. Jones' office is located in Corsicana, Texas. Tricare paid $11,799.79 on or about April 15, 2015 for this medically unnecessary scar cream.

176.    On March 11, 2015, Dr. Bruce Kottke wrote a scar cream prescription, RxNumber 132606, for C.F., a patient located in Pensacola, Florida. Dr. Kottke's office is located in Lakeland, Florida. Tricare paid $5,176.44 on or about May 1, 2015 for this medically unnecessary scar cream.

177.    On April 29, 2015, Dr. Tim Kwiatkowski wrote pain cream and wellness capsules prescriptions, RxNumbers 139890 and 139892, for R.M., a patient located in Fairfax, Virginia. Dr. Kwiatkowski's office is located in Durham, North Carolina. Tricare paid $6,089.10 on or about May 5, 2015 for these medically unnecessary pain cream and wellness capsules.

178.    On March 20, 2015, Dr. Marjorie Lantum wrote a wellness capsules prescription, RxNumber 134066, for R.D., a patient located in Huntingdon, Tennessee. Dr. Lantum

contracted with or was employed by 1stCare to prescribe this medication.   Tricare paid $12,683.33 on or about April 28, 2015 for these medically unnecessary wellness capsules.

179.   On April 6, 2015, Dr. Ronald Lubetsky wrote scar cream prescriptions, RxNumbers 135348 and 135349, for B.B., a patient located in Jacksonville, Florida.   Dr. Lubetsky's office is located in Miami Beach, Florida.   Tricare paid $25,873.12 on or about April 20, 2015 for these medically unnecessary scar creams.

180.   On March 31, 2015, Dr. Miguel Macias wrote a wellness capsules prescription, RxNumber 135845, for E.D., a patient located in San Antonio, Texas.   Tricare paid $17,918.03 on or about April 23, 2015 for these medically unnecessary wellness capsules.

181.   On April 17, 2015, Dr. Randy Mahon wrote pain cream, scar cream, and wellness capsules prescriptions, RxNumbers 139652, 139656, and 139661, for R.B., a patient located in Port Orchard, Washington.   Dr. Mahon's office is located in Williamson, West Virginia.   Tricare paid $45,081.01 on or about May 8, 2015 for these medically unnecessary pain cream, scar cream, and wellness capsules.

182.   On December 19, 2014, Dr. Sanjeev Mall wrote a pain cream prescription, RxNumber 136086, for N.W., a patient located in San Antonio, Texas.   Dr. Mall's office is located in Las Vegas, Nevada.   Tricare paid $4,368.63 on April 27, 2015 for this medically unnecessary pain cream.

183.   On April 25, 2015, Dr. Christian George Mayaud wrote a pain cream prescription, RxNumber 139564, for E.D., a patient located in Fleming Island, Florida.   Dr. Mayaud's office is located in Yonkers, New York.   Tricare paid $4,309.70 on or about May 7, 2015 for this medically unnecessary pain cream.

184.    On March 25, 2015, Dr. David McCarther wrote scar cream prescriptions, RxNumbers 134020 and 134022, for J.W., a patient located in Fredericksburg, Virginia. Dr. McCarther's office is located in Lexington, Ohio. Tricare paid $28,003.18 on or about April 9, 2015 for these medically unnecessary scar creams.

185.    On April 27, 2015, Dr. Ghassan Adnan Mohsen wrote a pain cream prescription, RxNumber 139983, for C.D., a patient located in Syosset, New York. Dr. Mohson's office is located in New Orleans, Louisiana. Tricare paid $1,845.20 on or about May 8, 2015 for this medically unnecessary pain cream.

186.    On April 6, 2015, Dr. Valinda Nwadike wrote a pain cream prescription, RxNumber 139538, for O.D., a patient located in Pound, Virginia. Dr. Nwadike's office is located in Leonardtown, Maryland. Tricare paid $4,309.70 on or about May 7, 2015 for this medically unnecessary pain cream.

187.    On March 20, 2015, Dr. Bernard Ogon wrote a wellness capsules prescription, RxNumber 134049, for S.W., a patient located in Harrisburg, Pennsylvania. Tricare paid $17,578.49 on or about March 30, 2015 for these medically unnecessary wellness capsules.

188.    On April 5, 2015, Dr. Anjum Qureshi wrote pain cream and wellness capsules prescriptions, RxNumbers 135523 and 135526, for W.W., a patient located in Kearney, Missouri. Kearney, Missouri is located approximately 187 miles away from Dr. Qureshi's office in Springfield, Missouri. Tricare paid $23,552.99 on or about April 13, 2015 for these medically unnecessary pain cream and wellness capsules.

189.    On March 12, 2015, Dr. Vijil Rahulan wrote pain cream, scar creams, and wellness capsules prescriptions, RxNumbers 132702, 132703, 132704, and 132708, for A.B., a patient located in Fort Riley, Kansas. Dr. Rahulan's office is located in Grandville, Michigan.

Tricare paid $52,483.11 on or about March 20, 2015 for these medically unnecessary pain cream, scar cream, and wellness capsules.

190.     On March 1, 2015, Dr. Prashanth Ramakrishna Rao wrote a pain cream prescription, RxNumber 132084 for I.G., a patient located in Tucson, Arizona.  Dr. Rao's office is located in San Antonio, Texas.  Tricare paid $3,220.08 on or about April 28, 2015 for this medically unnecessary pain cream.

191.     On April 17, 2015, Dr. Cary Rose wrote a pain cream prescription, RxNumber 136581, for T.B., a patient located in San Antonio, Texas.  Dr. Rose's office is located in Longview, Texas.  Tricare paid $4,356.79 on or about April 22, 2015 for this medically unnecessary pain cream.

192.     On April 2, 2014, Dr. Alan Rosenthal wrote pain cream and wellness capsules prescriptions, RxNumbers 135000 and 135002, for C.M., a patient located in Seymour, Indiana. Dr. Rosenthal's office is located in Carmel, California.  Tricare paid $23,189.09 on or about April 15, 2015 for these medically unnecessary pain cream and wellness capsules.

193.     On March 10, 2015, Dr. Alexander Scheuermann wrote pain and scar cream prescriptions, RxNumbers 132568 and 132569, for S.H., a patient located in Jacksonville, Florida.  Dr. Scheuermann's office is located in Boca Raton, Florida.  Tricare paid $30,502.57 on or about March 17, 2015 for these medically unnecessary pain and scar creams.

194.     On March 9, 2015, Dr. Vincent Sciortino wrote a pain cream prescription, RxNumber 132455, for M.P., a patient located in Merritt Island, Florida.  Tricare paid $5,168.87 on or about March 10, 2015 for this medically unnecessary pain cream.

195.    On April 12, 2015, Dr. Amjad Shihadeh wrote a wellness capsules prescription, RxNumber 136586, for W.G., a patient located in Kokomo, Indiana. Tricare paid $16,194.22 on or about April 21, 2015 for these medically unnecessary wellness capsules.

196.    On April 13, 2015, Dr. Rita Starritt wrote pain cream and wellness capsules prescriptions, RxNumbers 136551 and 136556, for B.S., a patient located in Fountain, Colorado. Dr. Starritt's office is located in La Jolla, California. Tricare paid $20,575.67 on or about April 30, 2015 for these medically unnecessary pain cream and wellness capsules.

197.    On March 19, 2015, Dr. Anna Danuta Steiner wrote pain cream and wellness capsules prescriptions, RxNumbers 133193 and 133194, for C.W., a patient located in Mechanicville, New York. Dr. Steiner contracted with 1stCare to prescribe these medications. Tricare paid $12,196.42 on or about March 25, 2015 for these medically unnecessary pain cream and wellness capsules.

198.    On March 14, 2015, Dr. Lloyd Stuart wrote a pain cream prescription, RxNumber 132819, for E.L., a patient located in Hephzibah, Georgia. Dr. Stuart's office is located in Dawsonville, Georgia. Tricare paid $5,242.93 on or about May 1, 2015 for this medically unnecessary pain cream.

199.    On April 9, 2015, Dr. Jean-Paul Tran wrote scar cream prescriptions, RxNumbers 136226 and 136227, for F.W., a patient located in Havana, Florida. Dr. Tran contracted with Balanced Rx to prescribe these medications. Tricare paid $34,348.45 on or about April 23, 2015 for these medically unnecessary scar creams.

200.    On October 30, 2014, Dr. Susy L. Vergot wrote scar creams and wellness capsules prescriptions, RxNumbers 126823, 126824, and 126825, for C.C., a patient located in Norfolk, Virginia. Dr. Vergot's office is located in Chattanooga, Tennessee. Tricare paid

$94,880.46 on or about February 23, 2015 for these medically unnecessary scar creams and wellness capsules.

201. On March 5, 2015, Dr. Cheryl Wingate wrote scar cream prescriptions, RxNumbers 132560, 132561, and 132562, for B.S., a patient located in Thomaston, Georgia. Tricare paid $45,647.72 on or about May 6, 2015 for these medically unnecessary scar creams.

202. On April 9, 2015, Dr. Claudette Zaremba wrote a wellness capsules prescription, RxNumber 136336, for C.R., a patient located in Colorado Springs, Colorado. Dr. Zaremba's office is located in Anchorage, Alaska. Tricare paid $17,977.23 on or about April 22, 2015 for these medically unnecessary wellness capsules.

### 4. Related Defendant Ankle and Foot Centers

203. Related Defendant Ankle and Foot Centers has prescribed medically unnecessary pain and scar creams and wellness capsules that were filled by compounding pharmacies, including FPS. For example, a doctor employed by Defendant Ankle and Foot Centers wrote a prescription for a pain cream, RxNumber C134204, for patient B.H. Tricare paid $3,644.39 on or about April 4, 2015 for this medically unnecessary pain cream. And as stated, on information and belief, its Chief Operating Officer, Mr. Domangue, receives a kickback from De Novo or FPS for every prescription prescribed by doctors at Defendant Ankle and Foot Centers.

### B. FPS'S ROUTINE WAIVER OF TRICARE CO-PAYMENTS VIOLATES THE FCA

204. FPS received a large number of complaints from Tricare beneficiaries about the co-payments they were required to pay for the compounded creams and wellness capsules the Prescribing Teledoctor Defendants prescribed. These complaints were due in part to the Marketing Defendants' practice of promising the Tricare beneficiaries (who they contact unsolicited) that Tricare will cover all or almost all of the costs of the prescriptions.

205. This practice assured that patients had no financial incentive to question the excessive costs of the pain and scar creams and wellness capsules.

206. FPS failed to satisfy the conditions established by Tricare, regulations, and program instructions to support those co-payment waivers.

207. Rather than insisting that these Tricare beneficiaries pay the $20 co-pay, FPS offers to reduce the co-payment amount significantly or waive the co-payment completely, and makes at best token efforts to collect co-payments, as demonstrated by the following examples:

208. A scar cream prescription written by Dr. Jason Beck on April 1, 2015, RxNumber 135059, indicated that the patient was "offered payments as low as [a] dollar." The patient, however, still declined the prescription.

209. A scar cream prescription written by Dr. Lloyd Stuart on April 1, 2015, RxNumber 135048, indicated that the patient was informed "not to feel overwhelmed" about the co-payments and that "he [could] make payments of what[]ever he [felt] comfortable paying."

210. A pain cream prescription written by Dr. Jason Beck on April 8, 2015, RxNumber 136017, indicated that the patient was informed "that Tricare would take care of everything and he wouldn't have to pay anything."

211. FPS has clear knowledge that the beneficiaries are not paying, in part or in full, their co-payments. FPS knowingly submitted or caused the submission of claims to Tricare that were false because (a) they were tainted by the knowing and willful offer and/or provision of kickbacks in the form of unjustified co-payment waivers; and (b) they misrepresented the actual cost of FPS's services. FPS's lack of enforcement of the co-payment requirement violates the FCA and the AKS.

## C.   THE DEFENDANTS' VIOLATIONS OF THE AKS ALSO VIOLATE THE FCA

212.   As noted above, "a claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]." 42 U.S.C. § 1320a-7b(g). The Compounding Pharmacy Defendants' scheme to obtain exorbitant payments from Tricare is driven in large part by kickbacks that violate the AKS. As part of this illegal scheme, the Compounding Pharmacy Defendants pay kickbacks to the Marketing Defendants and to the Prescribing Teledoctor Defendants for the purpose of incentivizing them to promote and prescribe their compounded creams and wellness capsules even though they are not medically necessary. In a variation of the scheme, a secondary Compounding Pharmacy Defendant pays kickbacks to the marketing company and to the Compounding Pharmacy Defendant that initially received the prescription from the Teledoctor. Additionally, the Compounding Pharmacy Defendants have also offered and paid kickbacks to both Mr. Domangue and Defendant Ankle and Foot Centers. The amount and extent of the kickbacks varies among the Compounding Pharmacy Defendants.

### 1.   FPS Has Violated the AKS

213.   FPS incentivizes its in-house marketing representatives to convince doctors to prescribe its creams and capsules by paying the marketing representatives or companies a 25 percent commission (on average) on each prescription written and dispensed. It also remunerates the Marketing Defendants for promoting and, through the Marketing Defendants' Teledoctors, prescribing its medications. By offering and paying remuneration to these marketing companies and marketing representatives to recommend these creams and capsules to Tricare beneficiaries or their doctors, FPS violated the AKS. *See* 42 U.S.C. § 1320a-7b(b)(2).

## 2. The Other Compounding Pharmacy Defendants Have Violated the AKS

214. The other Compounding Pharmacy Defendants have also violated the AKS by paying illegal kickbacks to both Marketing Defendants and other Compounding Pharmacy Defendants. As explained above, a Compounding Pharmacy Defendant that receives a signed prescription for medications will sometimes transfer the prescription to a secondary Compounding Pharmacy Defendant. The secondary Compounding Pharmacy Defendant fills the prescription, bills Tricare, and pays kickbacks to both the Marketing Defendants and the first Compounding Pharmacy Defendant.

## 3. The Marketing Companies Have Accepted and Paid Illegal Kickbacks in Violation of the AKS

215. The Marketing Defendants have also accepted illegal kickbacks in violation of the AKS. The Marketing Defendants solicit and accept kickbacks in the form of commissions from the Compounding Pharmacy Defendants in return for identifying and contacting Tricare patients and having the Prescribing Teledoctor Defendants prescribe creams and capsules to them. In addition, the Marketing Defendants pay kickbacks to the Prescribing Teledoctor Defendants for each pain cream, scar cream, and wellness capsule prescription they write.

## 4. The Prescribing Teledoctor Defendants Have Accepted Illegal Kickbacks

216. The Compounding Pharmacy Defendants have paid illegal kickbacks to the Prescribing Teledoctor Defendants to induce them to prescribe their compounded creams and wellness capsules to Tricare beneficiaries. Specifically, on information and belief, these kickbacks take the form of referrals for telephonic consultations to prescribe these medications (for which the Prescribing Teledoctor Defendants are paid by Tricare) and/or compensation for each paid prescription they write.

## VII.   DAMAGES

217.   Each of the payments received by the Defendants related to the prescription of medically unnecessary pain creams, scar creams, and wellness capsules was the result of a false claim within the meaning of the FCA.

218.   Defendants are therefore liable to the United States of America for at least hundreds of millions of dollars in damages.

### Count I: False or Fraudulent Claims
### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

### (All Defendants)

219.   Mr. McFarland incorporates by reference the preceding paragraphs of this Complaint.

220.   The Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval that were not medically necessary and/or were not properly documented, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

221.   The false or fraudulent claims were the CMS Form 1500 Health Insurance Claim Forms that the Defendants either submitted or caused to be submitted to the Tricare program throughout the relevant period.

222.   Because of Defendants' false or fraudulent claims, the United States suffered damages.

223.   Mr. McFarland cannot at this time identify each and every false or fraudulent claim for payment or approval, because there are thousands of such false or fraudulent claims made over an extended period of time, and Mr. McFarland has no control over the Defendants and no access to the records in their possession. The false or fraudulent claims include (but are

not limited to) many, most, or all of the prescriptions for pain creams, scar creams, and wellness capsules submitted by the Compounding Pharmacy Defendants to Tricare for payment or approval and caused to be presented to Tricare by the Marketing Defendants, the Prescribing Teledoctor Defendants, and Defendant Ankle and Foot Centers.

224.     Defendants are jointly and severally liable to the United States for treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants to the Tricare program.

**Count II: False or Fraudulent Statements**
**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**

**(Compounding Pharmacy Defendants and Prescribing Teledoctor Defendants)**

225.     Mr. McFarland incorporates by reference the preceding paragraphs of this Complaint.

226.     The Compounding Pharmacy Defendants and the Prescribing Teledoctor Defendants knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment or approval by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

227.     Specifically, the Compounding Pharmacy Defendants and the Prescribing Teledoctor Defendants regularly certified to Tricare that the pain creams, scar creams, and wellness capsules were "medically indicated and necessary for the health of the patient" and that the information on the claims forms for such medications and the consultations related to such medications was "true, accurate and complete." These false and fraudulent statements caused the United States to pay out sums that it would not have paid had it known that the statements were false.

228. The false records or statements appeared on CMS Form 1500, where the Compounding Pharmacy Defendants and Prescribing Teledoctor Defendants falsely certified to the United States, *inter alia*, that their claims for Tricare payment were true, accurate, and complete.

229. The Compounding Pharmacy Defendants' and Prescribing Teledoctor Defendants' records or statements on CMS Form 1500 also were false or fraudulent because they overstated the cost of the Compounding Pharmacy Defendants' and Prescribing Teledoctor Defendants' claims for Tricare payment because Tricare would not have paid the claims absent the records or statements.

230. Mr. McFarland cannot at this time identify each and every such false statement, because there are thousands of such statements that were made by the Compounding Pharmacy Defendants and the Prescribing Teledoctor Defendants over an extended period of time, and Mr. McFarland has no control over the Compounding Pharmacy Defendants and the Prescribing Teledoctor Defendants and no access to the records in their possession. However, the Compounding Pharmacy Defendants and the Prescribing Teledoctor Defendants made, used, or caused to be made or used false or fraudulent records or statements material to the payment of false or fraudulent claims in the form of certifications related to at least many, most, or all of the prescriptions and consultations for pain creams, scar creams, and wellness capsules that were submitted to Tricare for payment or approval.

231. Because of the Compounding Pharmacy Defendants' and Prescribing Teledoctor Defendants' false or fraudulent records or statements, the United States suffered damages.

232. The Compounding Pharmacy Defendants and the Prescribing Teledoctor Defendants are jointly and severally liable to the United States for treble damages under the

False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by the Compounding Pharmacy Defendants and the Prescribing Teledoctor Defendants to the Tricare program.

### Count III: False or Fraudulent Claims (Kickbacks)
### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

### (All Defendants)

233.    Mr. McFarland incorporates by reference the preceding paragraphs of this Complaint.

234.    The Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the United States for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

235.    The false or fraudulent claims were the CMS Form 1500 Health Insurance Claim Forms that the Defendants either submitted or caused to be submitted to the Tricare program throughout the relevant period.

236.    First, the Defendants knowingly presented, or caused to be presented, false or fraudulent claims because the claims were tainted by kickbacks that the Compounding Pharmacy Defendants knowingly and willfully provided and which the Marketing Defendants, the Prescribing Teledoctor Defendants, Defendant Ankle and Foot Centers, and Mr. Domangue knowingly and willfully received for the purpose of incentivizing the promotion and prescription of pain creams, scar creams, and wellness capsules, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), (g).

237.    Second, the Compounding Pharmacy Defendants knowingly presented, or caused to be presented, false or fraudulent claims when the secondary Compounding Pharmacy Defendants knowingly and willfully provided kickbacks to the Compounding Pharmacy

Defendants that initially received prescriptions for pain creams, scar creams, and wellness capsules, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), (g).

238. Third, the Compounding Pharmacy Defendants knowingly presented, or caused to be presented, false or fraudulent claims when they knowingly and willfully provided to Tricare beneficiaries co-payment waivers, at least one purpose of which was to induce the beneficiaries to obtain additional medical services from the Compounding Pharmacy Defendants paid for by the Tricare program, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), (g).

239. Fourth, the Prescribing Teledoctor Defendants knowingly presented, or caused to be presented, false or fraudulent claims when they submitted claims for consultations for Tricare beneficiaries who were referred to them by the Compounding Pharmacy Defendants and Marketing Defendants for the purpose of incentivizing the promotion and prescription of pain creams, scar creams, and wellness capsules, in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), (g).

240. Because of Defendants' false or fraudulent claims, the United States suffered damages.

241. Defendants are jointly and severally liable to the United States for treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants to the Tricare program.

**Count IV: False or Fraudulent Claims**
**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

**(Prescribing Teledoctor Defendants)**

242. Mr. McFarland incorporates by reference the preceding paragraphs of this Complaint.

50

243.   The Prescribing Teledoctor Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

244.   Specifically, the Prescribing Teledoctor Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the United States by submitting claims to Tricare for "consultations" conducted by telephone to prescribe medically unnecessary pain creams, scar creams, and wellness capsules. These consultations were not medically necessary; did not meet accepted standards of care; and are in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

245.   The false or fraudulent claims were the CMS Form 1500 Health Insurance Claim Forms that the Prescribing Teledoctor Defendants either submitted or caused to be submitted to the Tricare program throughout the relevant period.

246.   Mr. McFarland cannot at this time identify each and every false or fraudulent claim for payment or approval, because there are thousands of such false or fraudulent claims made over an extended period of time, and Mr. McFarland has no control over the Prescribing Teledoctor Defendants and no access to the records in the possession of the Prescribing Teledoctor Defendants. The false or fraudulent claims include (but are not limited to) many, most, or all of the consultations related to prescriptions for pain creams, scar creams, and wellness capsules submitted by the Prescribing Teledoctor Defendants to Tricare for payment or approval.

247.   Because of the Prescribing Teledoctor Defendants' false or fraudulent claims, the United States suffered damages.

248.   The Prescribing Teledoctor Defendants are jointly and severally liable to the United States for treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by the Prescribing Teledoctor Defendants to the Tricare program.

### Count V: Conspiracy
### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C)

### (All Defendants)

249.   Mr. McFarland incorporates by reference the preceding paragraphs of this Complaint.

250.   The Compounding Pharmacy Defendants, Marketing Defendants, Prescribing Teledoctor Defendants, and Defendant Ankle and Foot Centers knowingly conspired with each other to commit acts in violation of 31 U.S.C. § 3729(a)(1)(A) & (a)(1)(B).

251.   By reason of Defendants' conspiracy to knowingly present, or cause to be presented, false or fraudulent claims for payment or approval, and Defendants' conspiracy to knowingly make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, the United States of America has been damaged in an amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each overpayment.

## VIII.  PRAYER FOR RELIEF

252.   For the foregoing reasons, Mr. McFarland respectfully requests that judgment be entered in favor of the United States of America and against Defendants for treble the damages to the United States, in an amount to be determined at trial, the maximum statutory penalty for each overpayment received in violation of the FCA, an award of costs, and any other relief the Court deems proper.

## JURY TRIAL DEMAND

Mr. McFarland demands a trial by jury of all issues so triable.

Dated: September 7 2016

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

By:_____

Faith E. Gay
Florida Bar No: 129592
faithgay@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000
Fax: (212) 849-7100

Sam S. Sheldon (*pro hac vice* pending)
samsheldon@quinnemanuel.com
777 6th Street, N.W., 11th Floor
Washington, D.C.  20001
Tel.: (202) 538-8000
Fax: (202) 538-8100

Valerie S. Roddy (*pro hac vice* pending)
valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
Tel.: (213) 443-3000
Fax: (213) 443-3100

Attorneys for Plaintiff-Relator Brady McFarland