UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,** *ex rel.*
**BRADY MCFARLAND,**

    **Plaintiff**

v.                                                                            CASE NO. 8:15-CV-1708-T-23T6W

**FLORIDA PHARMACY SOLUTIONS,
INC.,** *et al.*

    **Defendants.**

## DEFENDANT WAYNE WILKERSON'S
## MOTION FOR SUMMARY JUDGMENT AND INCORPORATED
## MOTION FOR ATTORNEYS' FEES AND EXPENSES

Defendant Wayne Wilkerson, by and through undersigned counsel, hereby files this Motion for Summary Judgment on the Relator's Second Amended Complaint, and files an incorporated Motion for Attorneys' Fees and Expenses, and as grounds therefore states:

### I. LEGAL STANDARDS: MOTION FOR SUMMARY JUDGMENT

1. A defendant is entitled to Summary Judgment of a complaint or portion thereof where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" pursuant to Rule 56(a), Fed.R.Civ.P. *See e.g., Laura v. J.D. Parker & Sons Co., Inc.*, Case No. 8:15-CV-2914, p. 2 (M.D. Fla. 2017).

2. "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Laura v. J.D. Parker & Sons Co., Inc.*, Case No. 8:15-CV-2914, p. 2, *citing, Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1300 (11th Cir. 2002).

3.     The moving defendant "bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial." *Laura v. J.D. Parker & Sons Co., Inc.*, Case No. 8:15-CV-2914, p. 2, *citing, Hickson Corp. v. N. Crossarm, Co., Inc*., 357 F.3d 1256, 1260 (11th Cir. 2004).

4.     Allegations as to issues of material fact must be reasonably substantive to defeat a Motion for Summary Judgment. *See e.g., Simmons v. Willcox*, 911 F.2d 1077, 1082 (5th Cir. 1990) ("[S]peculative allegations . . . are insufficient to create a genuine issue of material fact precluding summary judgment.").

## II. INTRODUCTION

5.     The Federal False Claims Act, 31 USC §§ 3729, *et seq*., penalizes the filing of a "false or fraudulent" claim for payment by the federal government. *See* 31 USC § 3729(a)(1)(A).

6.     The Relator alleges that the Defendant received kickbacks in exchange for "funneling" patients to Florida Pharmacy Solution, Inc. ("FPS"), and that the Defendant thereby knowingly and intentionally caused to be presented materially false or fraudulent claims to the Tricare program. *See* Second Amended Complaint, ¶¶ 4, 17, 18, 23, 35, 116, 117, 187, and 189.

7.     The federal anti-kickback statute, 42 USC § 1320a-7b(b)(1), provides:

> (1) ***Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind***—
>
> (A) ***in return for referring an individual*** to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>
> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service,

2

> or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both. [emphasis added]

## III. RELEVANT FACTS

### A. Realtor's Deposition Testimony

8. The Relator testified clearly and repeatedly that his concern with FPS's marketing activities was that FPS, via an outsourced Sales Director by the name of Eric Mayes, appeared to target Tricare beneficiaries around military bases for prescription of compounded pharmaceuticals. Exhibit B, Relator Deposition, p. 28, l. 18 – 22; p. 44, l. 3 – 25; p. 45, l. 9 – 16; p. 86, l. 2 – 22; p. 98, l. 1 – 7; p. 110, l. 15 – 17.

9. The Relator testified that he genuinely believed that it was "wrong" for the Defendants in this case to:

> a). focus marketing efforts on Tricare beneficiaries and military bases; and,
>
> b). utilize data mining for such targeting. Exbibit B, Relator Deposition, p. 42, l. 14 – p. 43, l. 18; p. 54, l. 4 – 25; p. 63, l. 10 – 13; p. 64, l. 8 – 9; p. 65, l. 20 – p. 66, l. 8; p. 102, l. 7 – 14.

10. Relator had never met or communicated with Defendant prior to the mediation in this case. Exhibit B, Relator Deposition, p. 48, l. 19 – p. 49, l. 7; p. 126, l. 12 – 21.

11. Relator has never spoken to the Defendant (except at mediation) either in person or by telephone, never been in a meeting with Defendant, and never even been in email contact with Defendant. Exhibit B, Relator Deposition, p. 48, l. 19 – p. 49, l. 7; p. 126, l. 12 – 21.

12. Relator testified that his concern with the Defendant's work regarding FPS is that he employed three physicians to write prescriptions for Tricare beneficiaries from all over the country. Exhibit B, Relator Deposition, p. 49, l. 8 – 13.

13. Relator could not testify at all as to the Defendant's knowledge or intent as to any allegation in this case:

> Q: How do you know what they [the Defendants] were thinking when they were doing all the things you've alleged in the Second Amended Complaint?
> A: I don't.
> Q: You don't know what they were thinking?
> A: I don't know what they were thinking. Exhibit B, Relator Deposition, p. 126, l. 22 – p. 127, l. 2.

14. Taking all Relator's deposition testimony as true, none of it remotely shows Defendant's knowing and willful causing of the referral of patients in exchange for kickbacks, or the knowing and willful cause of the filing of a false claim.

15. Instead, Relator's testimony shows that he had a genuine personal objection to the FPS Tricare business model (and Relator is of course entitled to that personal opinion), and nothing more.

16. None of Relator's testimony showed a violation of law of any kind.

## VI. RELEVANT LAW

**A. Fraud Must be Shown with Particularity**

17. Allegations of false claims fraud due to kickbacks are subject to heightened scrutiny and must be shown with particularity. *Carrel, et al. v. AIDS Healthcare Foundation, Inc.,* Case No. 17-13185, p. 17 (11th Cir. 2018) (Motion for Summary Judgment for defendant regarding kickback allegations in false claims act case); *U.S. ex rel. Mastej v. Health Management Associates, Inc.*, 591 F. Appx. 693, 704 (11th Cir.

2014); *U.S. ex rel. Clausen v. Laboratory Corporation of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (Relator must show the "'who,' 'what,' 'where,' 'when,' and 'how'" of the alleged false claims.).

**B. False Claims Due to Kickbacks Must be Shown with Particularity**

18.     A false claims action can be proven where the submission of a false claim was <u>directly</u> caused by an alleged kickback payment. *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 100 (3rd Cir. 2018) ("A kickback does not morph into a false claim unless a particular patient is exposed to an illegal recommendation or referral and a provider submits a claim for reimbursement pertaining to that patient. Even if we assume . . . illegal kickbacks, that is not enough to establish that the underlying medical care to any of the . . . patients was connected to a breach of the Anti-Kickback Statute; we must have some record evidence that shows a link between the alleged kickbacks and the medical care received . . . .").

19.     Kickbacks under the false claims act can certainly be <u>indirect</u>, but "remuneration cannot induce a referral unless it is directed towards a person with power to make referrals." *Jones-McNamara v. Holzer Health Systems*, Case No. 15-3070, p. 15 (6th Cir. 2015) (Motion for Summary Judgment for defendant regarding alleged kickbacks in false claims act case.); *U.S. ex rel. Perales v. St. Margaret's Hospital*, 243 F.Supp.2d 843, 852-54 (C.D. Ill. 2003) (The anti-kickback statute contemplates that the remuneration at issue be directed to an entity "in a position to generate Federal health care program business" and that "the person receiving the inducement is the one prohibited from making the referral to the entity that offered the remuneration.").

20.     In this case, at most, Relator can argue that "but for" the Defendant's marketing activities on behalf of FPS, there might not have ultimately occurred the claims at issue, which is entirely insufficient to show liability.  *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006) (Court rejected the "but for" causation test for false claims act liability).

C. **Requirement to Show Falsity of the Claims**

21.     Under 31 USC § 3729(a), claims can be either "legally" false or "factually" false.  *U.S. v. Scientific Applications International Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010).

22.     A claim is factually false when the claim information presented to the government is materially inaccurate.  *U.S. ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008).

23.     Given that the Defendant was not a contracted Tricare medical provider, it is literally not possible that the Defendant could have made a "factually" false claim to Tricare.

24.     A claim is legally false when "a claimant . . . falsely certifies compliance with [a] statute or regulation."  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997).

25.     A showing of legal falsity requires a demonstration that the defendant lied to the government as to the defendant's compliance with applicable laws.  *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d at 94 (A claim is "legally false when the claimant lies about its compliance with a statutory, regulatory, or contractual requirement.").

26. Given that the Second Amended Complaint does not (and cannot) allege that the Defendant caused factual falsity, the Relator's allegations of falsity necessarily refer to only legal falsity. *U.S. ex rel. Mastej v. Health Management Associates, Inc.*, 591 F. Appx. at 705-06.

**D. Requirement to Show Certification of Compliance for Legal Falsity**

27. A realtor alleging a kickback in a false claims action must show that the provider which submitted claims for reimbursement, and received such reimbursement, certified compliance of the claims with the anti-kickback statutes. *U.S. ex rel. Franklin v. Parke-Davis,* 147 F.Supp.2d 39, 54 (D. Mass 2001) ("[A] violation of the federal antikickback provision is not a *per se* violation of the FCA. . . . In order for the antikickback violation to be transformed into an actionable FCA claim, the government must have conditioned payment of a claim upon the claimant's certification of compliance with the antikickback provision."); *U.S. v. Eisai, Inc.*, Case No. 13-10973, p. 30 (11th Cir. 2014).

28. Certification can be express or implied. *U.S. ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 305 (3rd Cir. 2011); *Mikes v. Straus*, 274 F.3d 687, 699 (2nd Cir. 2000); *U.S. ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d at 1217; *U.S. v. Scientific Applications International Corp.*, 626 F.3d at 1266.

29. Regardless, the Defendant has never been a Tricare provider (no Tricare contract, no Tricare provider number) and thus has never, and could never, submit claims to Tricare, so it is literally not possible for Defendant to have falsely certified the claims at issue (either expressly or by implication).[1]

---

[1] Perhaps this fatal flaw in the mis-pleading of the Second Amended Complaint could have been cured by Relator's pleading of a conspiracy under 31 § 3729(a)(1)(C), but

30. In sum, it is a basic requirement of law for the Relator to show the nature of the alleged falsity of the claims at issue – either factual or legal – and Relator has not and cannot show either. *U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F.Supp.3d 1326, 1344 (S.D. Fla. 2015), *affirmed*, 857 F.3d 1148 (11th Cir. 2017); *U.S. ex rel. Mastej v. Health Management Associates, Inc.*, 591 F. Appx. at 705-06.

**E. Requirement to Show Materiality of Legal Falsity**

31. As well, the showing of legal falsity of a claim must be material. *Universal Health Services v. U.S. ex rel. Escobar,* 136 S. Ct. 1989, 2002 (2017); *Marsteller v. Tilton*, 880 F.3d 1302, 1312 (11th Cir. 2018).

32. "A misrepresentation about compliance with a statutory, regulatory or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Universal Health Services v. U.S. ex rel. Escobar,* 136 S. Ct. at 2002; *Marsteller v. Tilton*, 880 F.3d at 1312 ("The materiality standard is 'demanding,' and 'rigorous.'"), *citing Universal Health Services v. U.S. ex rel. Escobar,* 136 S. Ct. at 2003.

33. This materiality standard is so demanding that even had the government known of the alleged kickbacks from FPS to the Defendant, that alone is insufficient. *Universal Health Services v. U.S. ex rel. Escobar,* 136 S. Ct. at 2003 ("A misrepresentation cannot be deemed material merely because the government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option

---

Relator did not do so, and 31 § 3729(a)(1)(A) as pleaded entirely fails the claims certification criterion.

to decline to pay if it knew of the defendant's noncompliance."); *U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 490 (3rd Cir. 2017).

34. In addition to establishing that the defendant had <u>knowledge</u> of the falsity of the claim, there must also be a showing of the defendant's knowledge of the <u>materiality</u> of such falsity. *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 136 S.Ct. at 1996 (Showing required that "the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."); *U.S. ex rel. Sikkenga v. Regency Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006) ("Generally, mere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient to establish liability under the FCA.").

35. Not only did the Defendant in this case not "lie" to the government, the Defendant had no communications with the government <u>at all</u> – <u>only</u> FPS could be in the position of certifying the validity of the claims at issue.

36. Stated alternatively, whether the Defendant's marketing activities complied with the anti-kickback statute or not, because Defendant could not have certified compliance with the anti-kickback statute to the Tricare program, there cannot be a showing of liability against the Defendant.

37. As well, a lack of materiality can be shown by the government's own decision to <u>waive remedial action</u> subsequent to obtaining knowledge of potential general non-compliance. *U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d at 490 ("Materiality may be found where 'the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.' *Id*. On the other hand, it is 'very strong evidence' that a requirement is not

material 'if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated.'"), *citing Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 136 S.Ct. at 2003.

38.     In this case, on 1/8/15, the Tricare Beneficiary Advisory Panel rejected by a vote of 5-2 a recommendation put forward by the Tricare Pharmacy and Therapeutics Committee to discontinue coverage of compounded medications, or impose a prior authorization requirement, despite clear Committee findings of overutilization and potential program abuse.  *See, TRICARE Votes to Continue Compounding*, *available at*: https://health.mil/About-MHS/OASDHA/Defense-Health-Agency/Operations/Pharmacy-Division/Beneficiary-Advisory-Panel.

39.     The Relator was unable to state any reason why the Tricare program did not address any potential program noncompliance regarding compound medications (*e.g.*, a prior authorization program).  Exhibit B, Relator Deposition, p. 92, l. 21 – p. 93, l. 6.

40.     Further, the declination of intervention of the Department of Justice in this case is a <u>strong</u> indicator of a lack of government concern as to materiality of Defendant's alleged noncompliance. *U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d at 490 (As an express criterion that the Court utilized in a finding of insufficient materiality of noncompliance, "[a]nd in those six years [of government investigation], the Department of Justice has taken no action against Genentech and declined to intervene in this suit."); Exbibit B, Relator Deposition, p. 9, l. 17 – 21.

**F. *Mens Rea* Must be Shown**

41.     To show false claims act liability due to kickbacks, a relator must "provide legally sufficient evidence" the defendant "knowingly and willfully entered into an illegal

10

kickback scheme." *Gonzalez v. Fresenius Medical Care of North America*, 689 F.3d 470, 476 (5th Cir. 2012) (District court granting defendant's Motion for Summary Judgment in false claims action because "[r]elator did not present any witness or document that would promote the inference of criminal intent to induce referrals."); *U.S. ex rel. Mastej v. Health Management Associates, Inc.*, Case No. 13-11859, p. 10; *U.S. v. Vernon*, 723 F.3d 1234, 1252 (11th Cir. 2013); *U.S. v. Starks*, 157 F.3d 833, 838-39 (11th Cir. 1998) (To violate the anti-kickback statute, a defendant must "act with knowledge that his conduct was unlawful.").

42. The legal standard at issue requires a showing that the defendant <u>actually knew</u> that the claims at issue were false or fraudulent. *U.S. v. Gonzalez*, 834 F.3d 1206, 1214 (11th Cir. 2016); ("[I]n a health care fraud case, the defendant must be shown to have known that the claims submitted were, in fact, false."), *citing U.S. v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007).

43. A showing of an intent to commit a crime must be specific to the individual defendant, and a showing of bad intent through a series of events and a series of defendants, is entirely insufficient. *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1244-45 (11th Cir. 2103) (Court rejecting the concept of a group's "collective *mens rea*.").

44. "Knowingly" under 42 USC § 1320a-7b(b)(1) requires a showing that the defendant acted "voluntarily and intentionally, not because of mistake or accident," and "willfully" requires a showing that the defendant acted "voluntarily and purposely with the specific intent to do something the law forbids, that is to say, with bad purpose to either disobey or disregard the law." *U.S. ex rel. Jamison v. McKesson Corp.*, 900

11

F.Supp.2d 638, 701-02 (N.D. Miss. 2012); *U.S. v. Starks*, 157 F.3d at 837-39; *Klaczak v. Consolidated Medical Transport*, 458 F.Supp.2d 622, 681 (N.D. Ill. 2006) (Court granted defendant's motion for summary judgment because realtor failed to show "the Anti-Kickback Statute's heightened *scienter* requirements – *i.e.*, 'knowingly' and "willfully' engaging in criminal conduct.").

45. A defendant's demonstrated attempts at compliance can entirely eliminate a showing of knowledge and intent to violate the anti-kickback laws. *U.S. ex rel. Hefner v. Hackensack University Medical Center*, 495 F.3d 103, 110 (3rd Cir. 2007).

46. A defendant's intent to violate a criminal statute may be determined by Motion for Summary Judgment. *Mikes v. Straus*, 274 F.3d at 704; *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2nd Cir. 1995); *Skouras v. U.S.*, 26 F.3d 13, 14 (2nd Cir. 1994).

47. Further, where a defendant in a false claims action can show commonplace business arrangements, payments to or from a prime government contractor are unlikely to be deemed kickbacks. *U.S. ex rel. Akwa v. General Electric Corporation*, 74 F.3d 1247, 1247 (9th Cir. 1996) (Motion for Summary Judgment granted for defendant in a false claims action where the defendant could show that discounts offered to a government contractor were commonplace in the industry and therefore did not appear to be illegal kickbacks.).

**G. Heightened Burden of Proof**

48. While the default burden of proof in a 31 USC § 3729(a) false claim case is the civil "preponderance of the evidence," when the underlying basis of the alleged false claim is the violation of <u>another statute</u> with a <u>heightened burden of proof</u>, that heightened burden of proof controls. *See e.g., Long Island Savings Bank, FSB v. U.S.,*

12

476 F.3d 917, 925 (Fed. Cir. 2007) ("We have explained that 'to prevail under [§ 2514], the government is required to establish by clear and convincing evidence that the contractor knew that its submitted claims were false, and that it intended to defraud the government by submitting those claims.'"), *citing Glendale Federal Bank, FSB v. U.S.*, 239 F.3d 1374, 1379 (Fed. Cir. 2001) and *Commercial Contractors, Inc. v. U.S.,* 154 F.3d 1357, 1362 (Fed. Cir. 1998); *U.S. v. Andrews*, 681 F.3d 509, 517 (3rd Cir. 2012) (Same, addressing alleged false claims filed with the Government of the Virgin Islands).

49. The burden of proof in a 42 USC § 1320a-7b(b)(1) kickback matter is the criminal standard – beyond a reasonable doubt. *U.S. v. St. Junius*, 739 F.3d 193, 215, fn. 18 (5th Cir. 2013).

50. The burden of proof in a 31 USC § 3729(a)(1)(A) false claims action where the alleged reason for the claims' falsity is taint due to kickbacks, the heightened criminal standard burden of proof applies. *U.S. v. Lahue*, 261 F.3d 993, 1016, fn. 11 (10th Cir. 2001) ("[T]he government must prove beyond a reasonable doubt that the defendant under consideration solicited or received the remuneration with specific criminal intent that the remuneration be 'in return for' referrals. To solicit or receive remuneration in return for referrals means to solicit or receive remuneration with intent to allow the remuneration to influence the reason and judgment behind one's patient referral decisions. The intent to be influenced must, at least in part, have been the reason the remuneration was solicited or received.").

**H. Anti-Kickback Safe Harbors**

51. Relator argues that the Defendant cannot claim protection from an anti-kickback "safe harbor."

52. Regardless, while a kickback safe harbor is a general assurance of compliance with 42 USC § 1320a-7b(b)(1), simply being outside a safe harbor <u>does not</u> constitute a kickback. *Klaczak v. Consolidated Medical Transport*, 458 F.Supp.2d at 687; 56 Fed. Reg. 35952, 35953; Opinion of the Department of Health and Human Services, Office of the Inspector General, No. 10-23, *available at*: https://oig.hhs.gov/reports-and-publications/archives/advisory-opinions/index.asp.

53. The federal government has long recognized that many medical sales representatives are compensated based upon productivity. *See* Opinion of the Department of Health and Human Services, Office of the Inspector General, No. 98-10, *available at*: https://oig.hhs.gov/reports-and-publications/archives/advisory-opinions/index.asp.

54. Because the FPS sales representative commissions were based upon productivity, the standard anti-kickback safe harbor for business relationships, the "personal services and management contracts harbor" under 42 CFR § 1001.952(d), is indeed inapplicable. *See* HHS-OIG Advisory Opinion No. 98-10.

55. And because the FPS sales representatives were not W-2 employees of FPS, the "employees" safe harbor of 42 CFR § 1001.952(i) is also inapplicable.

56. But clearly, individuals who do not fall into an anti-kickback safe harbor pursuant to their medical sales compensation model are not *per se* guilty of the crime of accepting a kickback in exchange for the causing of a referral of a patient for medical goods or services financed by the government. *See* HHS-OIG Advisory Opinion No. 98-10.

**I. The Requirement of a Showing of Control**

57.     Perhaps the closest precedent regarding the facts at issue is the line of cases led by *U.S. v. Vernon*, 723 F.3d at 1255-56.

58.     *Vernon* stands for the proposition that if a non-physician defendant is conclusively shown to be <u>in control</u> of a patient referral stream, to include control of the physicians who are actually "referring" the patients, then such non-physician can be guilty under 42 USC § 1320a-7b(b)(1).  *U.S. v. Vernon*, 723 F.3d at 1255-56; *U.S. v. Starks*, 157 F.3d at 833 (Two non-physicians convicted for <u>directly and personally</u> brokering substance abuse patients); *U.S. v. Miles*, 360 F.3d 472, 480 (5th Cir. 2004) (No non-physician kickbacks found because "[t]he payments from APRO were not made to the relevant decisionmaker as an inducement or kickback for sending patients to APRO."); *U.S. v. Iqbal*, Case No. 16-3065, p.10 (8th Cir. 2017).

## V. LEGAL ANALYSIS

59.     Given that physicians, such as the physicians allegedly employed by the Defendant in this case, routinely write prescriptions for medications to be filled at pharmacies such as FPS, the Defendant's alleged acts in this case do not generate any kickback liability.  *U.S. ex rel. Akwa v. General Electric Corporation*, 74 F.3d at 1247.

60.     Because telemedicine is a routine and legal format for the delivery of medicine, the Defendant's business model appears to be entirely compliant with applicable law.[2] *U.S. ex rel. Hefner v. Hackensack University Medical Center*, 495 F.3d at 110.

---

[2] The Second Amended Complaint at ¶ 110 alleges that the beneficiaries who received telemedicine consults "were almost all" in Virginia and Tennessee, and such states authorize telemedicine for pharmaceutical prescribing, per VA Code Ann. §§ 38.2-3418.16 and 54.1-2902, and TN R. Ann. §§ 0880-02.-16 and 1050-02.-17.

61. Relator alleges a legal (and not factual) false claim, therefore a showing of certification is key. *U.S. ex rel. Escobar*, 136 S. Ct. at 2002.

62. Because Defendant had no apparent contact with the Tricare program, there could be no such certification. *U.S. ex rel. Franklin v. Parke-Davis,* 147 F.Supp.2d 54; *U.S. v. Eisai, Inc.*, Case No. 13-10973, p. 30.

63. Without a showing of direct or indirect patient referrals, there is no reasonable indicia of any kickback liability. *Jones-McNamara v. Holzer Health Systems*, Case No. 15-3070, p. 15; *U.S. ex rel. Perales v. St. Margaret's Hospital*, 243 F.Supp.2d at 852-54.

64. The glaring break in the chain of causation between the Defendant's marketing activities and the knowing and willful cause of the submission of a false claim to the Tricare program is the physicians who actually did the prescribing and "referring" of the patients at issue.

65. Not only does the intervention of the physicians break the causality that must be shown to plead a kickback against the Defendant, without an allegation that the physicians conspired to file false claims (and there is no such allegation in this case), this sharp attenuation essentially breaks the entire kickback argument. *U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.*, 587 F.Supp.2d 1280, 1291-92 (M.D. FL 2009); *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d at 714 (False claims act requires a showing that the defendant's "specific conduct cause[d] the presentment of a false claim.").

66.  Here, there is no showing whatsoever that Defendant was in control of the stream of patient referrals to FPS, as is required to show liability. *U.S. v. Vernon*, 723 F.3d at 1255-56; *U.S. v. Starks*, 157 F.3d 833 (11th Cir. 1998); *U.S. v. Miles*, 360 F.3d at 480; *U.S. v. Iqbal*, Case No. 16-3065, p.10.

67.  Simply put, Relator's case fails because there is no showing that FPS "knowingly and willfully made a payment or offer of payment as an inducement to the payee [the Defendant] to refer an individual to another for the furnishing of an item or service that could be paid for by a federal healthcare program." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*, 565 F.Supp.25 153, 160 (D.D.C. 2008), *citing, U.S. v. Miles*, 360 F.3d at 479-80.

68.  At most, Relator can show aggressive patient marketing techniques, which could be construed as an FPS "Condition of Participation" administrative violation of Tricare regulations; but not a "Condition of Payment" violation that is subject to a false claim action. *See* Second Amended Complaint, ¶ 14 ("Wilkerson . . . used cold calling, data mining, and other marketing tactics to identify TRICARE beneficiaries located across the country."); *U.S. ex rel. Landers v. Baptist Memorial Health*, 525 F.Supp.2d 972, 979 (W.D. Tenn. 2007); *U.S. v. Vista Hospice Care, Inc.*, 778 F.Supp.2d 709, 720-21 (N.D. Tex. 2011).

## VI.  ATTORNEYS' FEES AND EXPENSES

69.  Reasonable attorneys' fees and expenses are available to a defendant in a false claims action where both the government does not intervene in the case and where "the defendant prevails in the action and the court finds that the claim of the person bringing

the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment" under 31 USC § 3730(d)(4).

70.     Because the Relator has not and cannot present any probative evidence that the Defendant knowingly and intentionally received kickbacks in exchange for the causing of a referral of Tricare patients, the allegations in this case lack reasonable merit and are frivolous. *Mikes v. Straus*, 274 F.3d 705 ("A claim is frivolous when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law.")

71.     Fees and expenses can be awarded to a defendant in a false claims case where, over the course of the litigation, the case begins to lack substantive merit but the realtor continues it regardless. *U.S. ex rel. Haycock v. Hughes Aircraft Co.*, 99 F.3d 1148, 1148 (9th Cir. 1996) ("The district judge had discretion to award attorney's fees if it found that the relator's claim was 'clearly frivolous,' 31 U.S.C. § 3730(d)(4), and it did. This standard is met if 'the plaintiff continued to litigate after' his claim 'clearly became' groundless or without foundation."), *citing Hughes v. Rowe*, 449 U.S. 5, 15 (1980).

## VII. SUMMARY

72.     Relator has failed to demonstrate in any manner that the Defendant knowingly and willfully generated false claims to the Tricare program by causing the referral of patients in exchange for kickbacks.

73.     Importantly, Relator does not allege that Defendant participated in a conspiracy to accept kickbacks and thereby cause the false claims under 31 § 3729(a)(1)(C).

74.     Instead, Relator alleges under 31 § 3729(a)(1)(A) that this individual Defendant <u>directly</u> and <u>personally</u> caused the presentation of false claims to the Tricare program, (and is therefore jointly and severally liable for all the FPS Tricare claims).

75.     The facts demonstrate none of the 31 USC § 3729(a)(1)(A) or 31 § 3729(a)(1)(A) required criteria, making the case clearly frivolous.

WHEREFORE, the Defendant hereby moves the Court to grant the Defendant's Motion for Summary Judgment and accompanying Motion for Attorneys' Fees and Expenses.

RESPECTFULLY SUBMITTED this 13th day of December, 2018.


    */Mark S. Thomas/*
Mark S. Thomas
Florida Bar No. 0001716
THOMAS HEALTH LAW GROUP, P.A.
5200 SW 91st Terrace, Suite 101-B
Gainesville, FL 32608
(352) 372-9990 (office)
(855) 629-7101 (fax)
mark@thomashlg.com
Counsel for Defendant Wayne Wilkerson

Case 8:15-cv-01708-SDM-TGW   Document 413   Filed 12/13/18   Page 20 of 20 PageID 3299

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the forgoing has been furnished by Federal Court electronic filing this 13th day of December, 2018 to:

P. Jason Collins
Craig A. Boneau
Ryan M. Goldstein
REID COLLINS & TSAI LLP
1301 S. Capital of Texas Highway
Building C, Suite 300
Austin, TX 78746
512-647-6100 (telephone)
512-647-6129 (facsimile)
jcollins@rctlegal.com
cboneau@rctlegal.com
rgoldstein@rctlegal.com


      */Mark S. Thomas/*
Mark S. Thomas